[Civ. No. 8377.  Second Appellate District, Division Two.—July 20, 1934.]

MUNICIPAL BOND COMPANY (a Corporation), Respondent, v. BALBOA CONSTRUCTION COMPANY (a Corporation) et al., Defendants; INDEMNITY INSURANCE COMPANY OF NORTH AMERICA (a Corporation), Appellant.

Joe Crider, Jr., Franklin A. Plank, John M. Martin, Frank L. Martin, Jr., and Sloss & Turner for Appellant.

Bailie, Turner & Lake for Respondent.

SCOTT, J., *pro tem.*—During the years 1928 and 1929 Balboa Construction Company, one of the defendants, was engaged in paving streets in the city of San Diego. The general business arrangement under which it operated was as follows: Money for that company to do business was loaned to it by plaintiff, and statutory and other bonds which it required were executed by defendant Indemnity Insurance Company. As security for the money so loaned by plaintiff to defendant Balboa Construction Company the latter assigned to plaintiff the warrant and other documents which the construction company was to receive from the city in payment for its work, and in addition thereto defendant indemnity company executed a finance bond agreeing to indemnify plaintiff against loss. Subject to plaintiff's rights under such assignment of the contract by Balboa Construction Company, the contract was assigned to defendant indemnity company to secure it against loss on its bonds so executed for the benefit of the Balboa company.

In January of 1929 the president of Balboa Construction Company and one Homer, attorney-in-fact for defendant indemnity company, came to the office of plaintiff and requested a loan of $25,000, which was needed to complete some subcontracts. Homer stated that his company would

give plaintiff a surety bond for that amount, and such a bond was executed in plaintiff's favor on January 30, 1929, in the following terms: ''Know all men by these presents that we, Balboa Construction Co., a corporation, under the laws of the State of California, having its principal place of business at San Diego, California, as principal, and the Indemnity Insurance Company of North America, a corporation, under the laws of the State of Pennsylvania, having its principal place of business at Philadelphia, Pa., as surety, are held and firmly bound unto the Municipal Bond Co., as obligee, in the penal sum of Twenty-seven Thousand Five Hundred and no/100 ($27,500.00) Dollars, lawful money of the United States of America, for the payment of which, well and truly to be made, we bind ourselves, our heirs, executors, administrators, successors and assigns, jointly and severally, firmly by these presents. Whereas, the said Municipal Bond Co. is about to loan the said principal the sum of Twenty-five Thousand and no/100 ($25,000.00) Dollars for six months. Now therefore, the condition of the above obligation is such that if the aforesaid principal shall repay the said Municipal Bond Co. the said sum of Twenty-five Thousand and no/100 ($25,000.00) Dollars on or before the maturity of said loan this obligation shall be null and void; otherwise it shall remain in full force and effect and be payable upon demand for the amount of said sum ($25,000.00) or any unpaid balance thereof, together with accrued interest and all costs of collection including attorneys' fees.''

Between February 4 and March 2, 1929, six drafts totaling $24,000 were executed by plaintiff payable to both defendants as copayees, were delivered to the Balboa company and were honored when presented for payment bearing the indorsement of both defendants. Defendant Balboa company executed and delivered to plaintiff a promissory note payable to it on demand for the amount of each respective draft plus interest and attorneys' fees in case of suit. The amount thus loaned not being repaid, plaintiff on June 24, 1930, filed suit against defendants. Balboa company defaulted, and the trial court gave judgment for plaintiff against defendant indemnity company on the bond. That defendant appeals.

60

Appellant contends that the $24,000 thus loaned and evidenced by the six drafts and six promissory notes was not the loan for which it was the surety, by reason of the fact that the loans thus made were payable on demand, whereas the loan which appellant guaranteed was to be for six months. The trial court found that the money was loaned by plaintiff to defendant Balboa company "under and pursuant to the terms" of the bond. The evidence supports this view. Appellant was intimately in touch with the work being carried on by the Balboa company, having joint control over its transactions and, in the case of this loan, having knowledge of the matter from the time of the negotiation of the loan until the money was spent. There is no substantial evidence to support a contention that the bond referred to any loan other than the one which was actually made. This is not a case in which plaintiff is seeking to recover from the surety at a time earlier than that specified in the bond. Whereas the bond referred to a loan for six months, this action was not instituted until eleven months after the expiration of the six months' period. The language of the paragraph which recites the consideration for the bond, "Whereas, the said Municipal Bond Co. is about to loan the said principal the sum of Twenty-five Thousand and no/100 ($25,000.00) Dollars for six months," obviously refers to a loan which was to be made after the signing of the bond, and the words and conduct of the parties may properly be referred to for the sole purpose of determining the identity of the loan which the bond in question was intended by the parties to secure. (Code Civ. Proc., sec. 1860; *Balfour* v. *Fresno Canal etc. Co.*, 109 Cal. 221 [41 Pac. 876].) Upon such reference the conclusion is inescapable that the loan actually made and upon which plaintiff has brought suit was the loan which the bond was intended to and did secure. In interpreting the terms of a contract of suretyship the same rules are to be observed as in the case of other contracts (Civ. Code, sec. 2837), and a contract must be so interpreted as to give effect to the mutual intention of the parties as it existed at the time of contracting, so far as the same is ascertainable and lawful (Civ. Code, sec. 1636), particular clauses of a contract being subordinate to its general intent. (Civ. Code, sec. 1650.)

The identity of the loan made as being the one covered by the bond in question is further shown by the conduct of one Eby, general agent of defendant indemnity company. On March 2, 1929, about thirty-one days after execution of the bond, Eby called at the office of plaintiff and stated that Balboa Construction Company wanted some money if there was not a margin left on the bond of $25,000, whereupon, after some calculation, the final draft of $1,000 was made out to Balboa company and the indemnity company as copayees, and defendant Balboa company executed its final note to plaintiff for that amount. "A contract of suretyship is to be fairly construed with a view to effecting the object for which it was given and to accomplish the purpose for which it was designed." (*El Dora Oil Co.* v. *Gibson,* 201 Cal. 231 [256 Pac. 550].) "The extent of the surety's liability must be gathered from the language used when read in the light of the circumstances attending the transaction." (*Hollenbeck-Bush Planing Mill Co.* v. *Amweg,* 177 Cal. 159, 162 [170 Pac. 148].)

Appellant urges that the trial court should have allowed interest on certain items which were credited as counterclaims. The existence of these items was disclosed during the trial and an amendment was allowed which set upon the principal sums without any claim for interest. The evidence was such as to justify the implied finding that these amounts were unliquidated until they were reduced to judgment, and an allowance of interest was properly refused. (*Burnett* v. *Glas,* 154 Cal. 249 [97 Pac. 423]; *Indemnity Ins. Co.* v. *Watson,* 128 Cal. App. 10 [16 Pac. (2d) 760].)

In the "first amended answer and counterclaim of defendant Indemnity Insurance Company of North America" four counterclaims were set up by that defendant and were disallowed by the trial court. It may be stated parenthetically that some of the contracts hereinafter referred to had been executed with R. W. Brown as street paving contractor, but Balboa company had taken over the rights and liabilities of Brown with the knowledge and consent of all parties concerned. Where the term "contractor" is used it will be understood to apply to either Brown or Balboa company, without changing the effect of the language used.

The four counterclaims were predicated upon the terms of four "financing contracts" between contractor and Municipal Bond Company and four finance bonds executed in favor of respondent by the contractor as principal and appellant indemnity company as surety, covering four street improvement jobs. Each financing contract provided for loans by respondent to contractor to enable the latter to pay for the materials and labor necessary to pave certain streets, and for the assignment by contractor to respondent of the warrants, diagrams, assessments and bonds received by him from the city of San Diego in payment for the work. Each of said "financing contracts" also contained the following provision concerning the funds thus loaned: "Said sums shall be loaned in installments as the work progresses to the satisfaction of second party; each installment in the discretion of second party shall in no event exceed 70 per cent of the value of the work done or the amount expended by said contractor in payment of material furnished and labor performed under said improvement contract since the loaning of the last preceding installment made under this contract. . . . Second party shall not, however, in the making of such advances, be restricted to said 70 per cent but in its discretion may advance a greater or lesser per cent of said value, and in so doing said contractor's sanction thereof and consent thereto is hereby acknowledged." Respondent in each contract agreed to buy the warrant, diagram, assessment and bonds received in each case at ninety-four, ninety-five or ninety-six per cent of the face value, to deduct and retain the amount due it under the said contract and pay over the balance to the contractor and appellant. The bond in each case executed by contractor as principal and appellant as surety referred to the finance contract for that job, and agreed to indemnify respondent up to an amount fixed in the surety bond against failure of contractor to carry out the terms of his contract with reference thereto.

Each surety bond contained the following recital: "Whereas the said obligee has agreed to lend and advance from time to time certain sums of money, not exceeding in the aggregate the sum of —— Dollars, for the purpose of enabling said contractor to perform and complete the matters and things to be performed and completed by the contractor under the said contract," etc. The amount set

out in each bond was substantially less than the estimated value of the work. Appellant bases its counterclaims on the contention that this recital in the surety bond limited the amount of respondent's priority as to the security, to the amount set out in the surety bond; that when respondent made advances beyond that amount such excess was not secured by the warrant, bond, etc., assigned to it by contractor as security, and respondent was required to turn over to appellant such part of the purchase price of the securities in excess of the amount set out in the surety bond as might be required to repay appellant for advances it had made.

Respondent advanced to the contractor on four jobs sums in excess of the amount set out in the surety bond, and which amounted to more than seventy per cent of the value of the work. Appellant, however, being liable under certain other surety bonds in connection with these same jobs, paid additional sums on claims for labor and materials. When each job was finished and respondent had deducted from the amount realized on each contract the sum it had advanced, the balance was insufficient to reimburse appellant for the payments made by it. If appellant's interpretation of the agreement were correct, respondent would be required to turn over to it sufficient of the amount realized on each contract to reimburse appellant, retaining only the sum fixed in the surety bond, even though that were substantially less than the amount actually advanced by respondent under the terms of the finance contract. It is apparent that the recital in the surety bond above quoted was intended by the parties to limit the liability of appellant as surety to reimburse respondent as obligee, and was not intended to fix a limit beyond which respondent could not be reimbursed for advances to the contractor. The language of the finance contract and the surety bond, construed together as they must be (*Storm & Butts* v. *Lipscomb,* 117 Cal. App. 6 [3 Pac. (2d) 567]; *W. P. Fuller & Co.* v. *Alturas School District,* 28 Cal. App. 609 [153 Pac. 743])., makes it evident that the parties intended that respondent should not be obligated to advance more than seventy per cent of the value of the work, but that it reserved the right to do so, and when the money was available at the end of the job it was entitled to repay itself for advances made by it before turning any

amount over to appellant. Appellant may not properly claim that respondent evinced bad faith toward it and violated its duty in making these advances, since the conduct of appellant while they were being made shows that it knew of and acquiesced in them. Each amount advanced by respondent was in the form of a draft payable to contractor and appellant as copayees. Such drafts were indorsed by both payees and the proceeds thereof were spent on the work in which both were interested, under the supervision and control of appellant.

The findings of the trial court and the judgment based thereon in favor of respondent, both as to the complaint and the counterclaim, are amply supported by the evidence, and the construction which the court placed on the contracts in evidence is clearly in accord with the expressed intention of the parties.

The judgment is affirmed.

Stephens, P. J., and Desmond, J., concurred.

A petition for a rehearing of this cause was denied by the District Court of Appeal on August 18, 1934, and an application by appellant to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on September 13, 1934.