[Civ. No. 921. Fourth Appellate District.—November 30, 1932.]

INDEMNITY INSURANCE COMPANY OF NORTH AMERICA (a Corporation), Appellant, v. E. P. WATSON, Jr., et al., Respondents.

Franklin A. Plank for Appellant.

Ray M. Harris for Respondents.

JENNINGS, J.—This action was instituted by plaintiff to recover from the defendant the sum of $5,743.13 alleged to be due from said defendant for earned premiums on certain policies of public liability and workmen's compensation insurance issued by plaintiff in which defendant was named as the insured and for charges made by plaintiff for the execution of a considerable number of bid bonds and contract bonds for and on behalf of defendant. At all times material to the present action defendant was a co-partnership engaged in general contracting business in the county of San Diego. Included in the complaint and forming a part thereof is a schedule of the various charges made by plaintiff for its services in issuing the aforesaid policies and bonds. This schedule comprises 75 different items specifying the date on which each bond was executed and each policy of insurance was issued and the charge made for each such bond or policy. Defendant's answer denied that the aforesaid sum was due to plaintiff. On the same date on which defendant's answer was filed, there was filed on defendant's behalf by its counsel an offer to confess judgment in the sum of $1743.13. This offer was not accepted by plaintiff and the case proceeded to trial on the issues framed by the pleadings. At the conclusion of the trial the matter was submitted to a jury selected for the purpose and a verdict was returned in plaintiff's favor for the sum of $1699.09. Plaintiff thereupon moved the court to render judgment in its favor in the sum of $5,199.09 notwithstanding the verdict, which motion was by the court denied. Plaintiff's motion for a new trial was likewise denied and from the judgment entered in conformity with the verdict, this appeal has been prosecuted. For the purpose of clarifying the matters presented by this appeal a brief statement of facts is required.

During the greater part of the time when the various insurance policies and bonds were issued and executed by plaintiff as aforesaid, the total amount of the charges for which comprise the sum named in plaintiff's complaint,

plaintiff was represented in the county of San Diego by a certain agent. This agent was a copartnership operating under the firm name of Faraday & Reilly. There is no dispute that the aforesaid copartnership was the duly appointed agent of plaintiff and the evidence is ample to show that the agent was authorized to collect premiums and charges for the issuance of insurance policies and the execution of bonds in plaintiff's name. An open account existed between plaintiff and its agent for insurance premiums and bond charges for policies of insurance and bonds which were issued through the agent in said county of San Diego. Among the clients of the agent was the defendant. Between defendant and plaintiff's agent there likewise existed an open account covering the premiums for insurance policies and bonds. The evidence produced during the trial showed that from January 1, 1927, until February 21, 1928, payments for insurance premiums and charges for the execution of bonds were consistently made by defendant to plaintiff's agent in response to statements therefor rendered to defendant by the agent. On February 21, 1928, plaintiff notified defendant that the firm of Faraday & Reilly no longer represented plaintiff, that it held from the agent an assignment of the account between defendant and the agent, and that remittances should thereafter be made direct to plaintiff. Accompanying the letter of notification was a statement under date of February 20, 1928, showing defendant indebted to plaintiff for insurance policies and bonds written through Faraday & Reilly in the total amount of $3,823.47.

Before entering upon a discussion of the various matters presented by this appeal, it is to be observed that, during the course of the trial, it was conceded by plaintiff that defendant was entitled to a credit of $442 upon the amount for which the action was brought. This credit was allowed by reason of an overcharge in one of the items appearing in the schedule of charges which was set out in the complaint. When the amount of this credit is subtracted from the amount named in the complaint, a balance of $5,301.13 remains as the sum claimed by plaintiff to be due from defendant.

Exclusive of the contention of plaintiff that it was entitled to interest at the legal rate on the amount properly

due from defendant which will hereafter receive attention, it is contended that the jury improperly took into account and deducted from the amount claimed by plaintiff certain sums claimed by defendant as proper credits, which sums amounted to a total of $3,544.04. Examination of the record indicates that the total sum specified was allowed by the jury since the verdict is for the exact amount admitted by defendant during the trial to be due to the plaintiff. The sum of $3,544.04 is comprised of three items. The first of these items consists of claimed overcharges for premiums on two policies of insurance issued by plaintiff and amounts to the sum of $44.04. The second item consists of a credit for $500 allowed to defendant by plaintiff's agent on June 20, 1927. The third item consists of a credit for $3,000 allowed to defendant by plaintiff's agent on November 28, 1927.

With respect to the credit of $44.04 it is plaintiff's contention that defendant offered to confess judgment for the sum of $1743.13, which it will be observed is the amount found to be due by the verdict, plus the sum of $44.04. This fact, together with the additional feature that defendant's answer contained merely a denial that the amount claimed in the complaint was due, forms the basis of plaintiff's contention that this particular item was incorrectly allowed as a credit by the jury. The contention is not sound. Plaintiff did not accept defendant's offer to confess judgment for the amount specified but chose to proceed to trial on the issues framed by the pleadings. The final issue presented by these pleadings was plaintiff's claim that a certain sum was due and defendant's denial that it owed this sum. Plaintiff was compelled to assume the burden of proving that the amount claimed by it was the proper amount due from defendant. Direct evidence was produced by defendant showing that with respect to two items contained in the schedule of charges there were overcharges which amounted to $44.04. The jury was therefore justified in making allowance for the amount indicated.

The circumstances attending the $500 credit of June 20, 1927, are as follows: During the month of December, 1926, Harry W. Faraday and two other individuals proposed to form a corporation for the writing of insurance, principally insurance required by contractors. Subscrip-

tions for capital stock in the corporation were taken. Among the subscriptions for capital stock was that of the defendant in the amount of $500, represented by two checks of defendant each for $250. The corporation was formed under the name of the Harry W. Faraday Corporation. No stock was issued and a short time thereafter Harry W. Faraday became a member of the firm of Faraday & Reilly. The sum of $500 was not used in developing the corporation. When the firm of Faraday & Reilly was formed the assets of the Harry W. Faraday Corporation were transferred to the copartnership. Among these assets was the sum of $500 advanced as aforesaid by defendant. This sum of money had been deposited in a bank. During the month of May, 1927, it was agreed between the copartnership of Faraday & Reilly and the defendant that this sum of $500 should be credited to the open account of defendant with the firm of Faraday & Reilly. This was accordingly done and on June 20, 1927, plaintiff's agent issued a credit memorandum which recited that defendant was given credit for this amount on the premium charged for a certain designated contract bond which had been theretofore executed by plaintiff. In support of its contention that the jury improperly allowed a credit for this amount, plaintiff relies upon the general rule that an agent given authority to make collections is authorized to collect money only and may not offset against the amount due the principal an indebtedness due from the agent to the third person. Here, however, there was evidence that the sum of $500 paid as aforesaid by defendant came into the hands of plaintiff's agent, was deposited in the bank to the credit of the agent and was paid to the various companies through whom Faraday & Reilly placed insurance or executed bonds for defendant. It cannot be disputed that, if plaintiff's agent had repaid the money to defendant, and defendant had then paid this sum to plaintiff's agent to be applied on the open account between these parties, plaintiff could not effectually complain. Exactly this same result was achieved by the procedure adopted. We conclude therefore that there was evidence presented to the jury which justified it in allowing credit to the defendant for the sum indicated.

The credit for $3,000 was allowed to defendant by plaintiff's agent under the following circumstances as disclosed

by the record: During the latter part of November, 1927, Messrs. Faraday and Reilly went to the office of defendant in the city of San Diego and stated that they needed $3,000 and requested defendant to make a payment of this sum on their account with the copartnership of Faraday & Reilly. An examination of defendant's books showed that defendant was then indebted to Faraday & Reilly in the sum of $3,260.54. After some consultation it was arranged that defendant would execute a promissory note in favor of Faraday & Reilly in the sum of $2887.50 payable in 90 days and that defendant would in return therefor receive credit for $3,000 from Faraday & Reilly. The difference of $112.50 between the amount for which the note was given and the credit for $3,000 which was to be allowed to defendant represented a discount of two per cent on the sum of $3,000 allowed by Faraday & Reilly and interest on the note for the 90-day period at the rate of eight per cent per annum which Faraday & Reilly were willing to assume. Shortly after the note was given it was discounted at the bank where the firm of Faraday & Reilly had its account and the proceeds of the note were credited to the account of Faraday & Reilly. It does not fully appear just what amount was realized by Faraday & Reilly through the discounting of the note although there is some evidence that the full amount for which the note was given was realized by the firm. Thereafter credit for $3,000 was duly given to defendant by Faraday & Reilly. The note was paid shortly after its maturity by defendant. The allowance of this credit of $3,000 by the jury is attacked by plaintiff on several grounds. ■ The general rule which forbids an agent empowered to make collections to receive anything other than money is again invoked. Plaintiff's counsel in his brief quotes the rule as announced in 2 C. J. 628, in the following language: "In the absence of special authority, as a general rule, an agent to collect cannot receive payment in notes of the debtor payable either to the agent himself or to his principal." However, the last sentence of the text from which the above quotation is taken is as follows: "But even though the receipt of such a payment is unauthorized, if the agent collects the money on the paper accepted by him the payment is good." The modification indicated by the last-quoted language would appear to fit exactly the

situation here presented and to furnish a complete answer to plaintiff's contention that the giving of the note effectually precludes the allowance of a credit therefor even though it is undisputed that thereby the agent received in money the amount of the note which upon maturity was paid by the debtor. In California the general rule which prohibits payment to an agent authorized to collect in any form other than money has been relaxed to permit payment by check. (*California Stearns Co.* v. *Treadwell*, 82 Cal. App. 553 [256 Pac. 242].) On principle, no good reason appears why the relaxation should not be extended as stated in the above-quoted language from Corpus Juris to include payment by note where, as here appears, money or its equivalent in bank credit was immediately secured by the agent through sale of the note which upon maturity was paid in full by the maker. ██ Further attack is made upon the allowance of the credit for $3,000 on the ground that, at the time the note was given, defendant was indebted to plaintiff's agent in a sum much less than the amount for which the note was made. In this connection, it is said that the acceptance of the note by plaintiff's agent constituted an overdraft of plaintiff's credits with the defendant which is prohibited. (*Faulkner* v. *Bank of Italy*, 69 Cal. App. 370 [231 Pac. 380].) The essential element of this attack rests in the declaration that at the time the note was given, defendant was indebted to the agent and more particularly to plaintiff in an amount much less than the amount represented by the note. Examination of the record discloses that defendant's bookkeeper testified that on the date on which the note was made defendant's books showed an indebtedness to the firm of Faraday & Reilly, plaintiff's agent, in the amount of $3,260.54, of which the sum of $3,174.81 was due to plaintiff. It must be observed that included in this latter amount were charges amounting to $979.30, which were later paid direct to plaintiff by another concern known as the Municipal Bonding Company. It appears that the last-named figure comprised charges made for the execution of certain finance bonds which were required by the Municipal Bonding Company from which defendant was borrowing money for the purpose of performing contracts into which it had entered. There was an oral agreement between defendant and the representative

of the Municipal Bonding Company that the latter concern would pay the charges made for the execution of the bonds upon completion of the work covered by defendant's contracts and final settlement, and it appears that this oral agreement was duly performed. In the meantime, however, the bonds were ordered by defendant, a statement for the charges made for execution of the bonds was rendered to defendant and on the date on which the note for $2,887.50 was executed these charges appeared in defendant's books as items of indebtedness due from defendant to plaintiff's agent. It further appears that it was not until the month of January, 1928, that defendant received information that payment of the charges had been made direct to plaintiff by the Municipal Bonding Company. The above narrated circumstances were sufficient to entitle defendant to regard the charges for the bonds as an indebtedness due from defendant to plaintiff's agent and the jury was thereby justified in concluding that no overdraft of credits in defendant's favor was created by the execution of the note for the amount heretofore stated.

Complaint is also made of the allowance by plaintiff's agent of a discount of two per cent on the credit for $3,000 amounting to $60 and the further assumption by the agent of interest on defendant's note for the period of 90 days. These two items amounted to the sum of $112.50, which was deducted from the proposed credit for $3,000 so that the note was made for the sum of $2,887.50. This action on the part of plaintiff's agent is said to constitute a violation of section 633b of the Political Code which prohibits insurance agents and brokers from allowing any rebate of premiums and thus rendered void the transaction between defendant and plaintiff's agent whereby the credit of $3,000 was allowed. However, the record contains evidence that plaintiff's agent was entitled to commissions on business which the agent secured ranging from seventeen and one-half per cent to thirty per cent of the charges made for the issuance of insurance policies and bonds and was authorized to retain such commissions before making remittance to its principal, the plaintiff. As heretofore indicated, the record contains evidence that on the date the note was executed defendant's books showed an indebtedness of $3,174.81 due the agent for policies and bonds theretofore issued in the

name of plaintiff. On this amount the agent was entitled to commissions in excess of $500 according to the evidence respecting the agreement between plaintiff and its agent for the payment of compensation to the agent. Plaintiff could not therefore complain if its agent chose to grant a discount and pay interest in order to secure immediate payment of money, some of which the evidence shows was past due, when the total amount of such discount and interest charges did not exceed the amount of compensation which the agent was entitled to receive. The language of section 633b of the Political Code, indicates that it is not applicable to the situation here presented since it prohibits the granting of rebates ''as an inducement to insurance''. The evidence produced by defendant entirely negatived any inference that the allowance of discount and payment of interest were made as an inducement to insurance.

Complaint is made that the trial court erred in refusing to give without modification eight instructions offered by plaintiff. Of the instructions thus offered three related to section 633b of the Political Code. We have heretofore stated our opinion that the evidence presented during the trial was such as to justify the court in concluding that the statute mentioned was not applicable. It follows, therefore, that no error was committed in the refusal of instructions which advised the jury as to the meaning and effect of the statute. Two other offered instructions related to the questions of negligence and were properly refused. Two of the instructions offered as aforesaid related to the allowance of interest on unpaid premiums and will receive later consideration in connection with plaintiff's contention that it is entitled to an allowance for such interest. The remaining instruction related principally to the credits of $500 and $3,000 allowed to defendant by plaintiff's agent and incorporates statements of legal principles which are not in accord with the views heretofore expressed. It is our opinion that the instruction was properly refused.

Objection is also made to two instructions which were given by the court. One of the instructions is obviously faulty as it contains the suggestion that defendant gave to plaintiff's agent a note for $3,000, whereas the evidence was clear that the note was given for a less sum. However, scrutiny of the instructions as a whole indicates that the

jury was correctly informed with respect to the fact that the note executed by defendant to plaintiff's agent was for a less amount than the credit allowed. The second instruction to which objection is made related to the allowance of the $500 credit by plaintiff's agent. It contains some indefinite language but, when the instruction is considered in its entirety and in connection with the other instructions given by the court, we are of the opinion that the jury was not thereby misled to plaintiff's prejudice.

The final contention presented by plaintiff on this appeal is that interest should have been allowed on whatever balance was found to be due for unpaid premiums and charges from the time when such insurance premiums and bond charges became due and it is urged that the court erred in refusing so to instruct the jury at plaintiff's request. As heretofore noted, the complaint alleged that certain insurance policies had been issued and certain bonds executed by plaintiff at defendant's request and certain charges were made for such services, the total amount of which charges was a certain sum. It was further alleged that a certain amount had been paid by defendant on account of such charges and that a certain balance remained due for the recovery of which plus interest the action was instituted. Defendant's answer denied that the amount claimed by plaintiff was due from defendant and alleged payments by defendant largely in excess of those admitted in the complaint. The action was tried by the court on the theory that the answer amounted to a general denial that any sum whatever was due from defendant to plaintiff. The general rule with respect to the allowance of interest is that where there is no contract to pay interest, the law awards interest upon money from the time it becomes due and payable, if such time is certain and the sum is certain or can be made certain by calculation. (*Gray* v. *Bekins*, 186 Cal. 389, 399 [199 Pac. 767]; *Perry* v. *Magneson*, 207 Cal. 617, 623 [279 Pac. 650]; 14 Cal. Jur., p. 678.) Having in mind the theory upon which the case was tried and the fact that with respect to certain items contained in the schedule of charges appearing in the complaint the amounts of such items were in dispute and the proof produced at the trial showed such amounts as alleged to be in excess of the amounts properly due, we have arrived at the conclusion

22

that the court was justified in refusing to advise the jury that it might make an allowance for interest. The test to be applied is whether or not the exact sum found to be due was known and admitted by defendant to be due to plaintiff. (*Gray* v. *Bekins, supra.*) When this test is applied it is apparent that not until the trial of the action was it ascertained or could it have been ascertained that a certain definite sum was due from defendant to plaintiff.

The judgment is therefore affirmed.

Barnard, P. J., and Marks, J., concurred.

A petition by appellant to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on January 26, 1933.