[Civ. No. 14193. First Dist., Div. One. Feb. 3, 1950.]

EUGENE ALBERT de ST. GERMAIN, Respondent, v. D. D. WATSON, as State Real Estate Commissioner, etc., et al., Appellants.

Fred N. Howser, Attorney General, R. L. Chamberlain and Richard H. Perry, Deputy Attorneys General, for Appellants.

Christin, Keegan & Carroll for Respondent.

BRAY, J.—Appellant Real Estate Commissioner of the State of California, suspended, for a period of 15 days, respondent's license to engage in business as a real estate broker. In a mandamus proceeding brought in the superior court, a judgment was entered vacating that suspension. From that judgment the commissioner has appealed on the judgment roll alone.

## QUESTION PRESENTED

The main question presented is whether the acceptance by a real estate broker of a nonnegotiable promissory note as the down payment on an agreement to purchase real property without informing the seller, who is the broker's client, of that fact, constitutes a violation of section 10176, subdivisions (a) and (i) (formerly subdivision (f)), Division 4, Business and Professions Code.[1]

---

[1]The act involved here is cited as the "Real Estate Law" section 10000, Business and Professions Code.

## FACTS

There is practically no dispute as to the facts. A transcript of the proceedings before the commissioner was incorporated in the return to the petition for the writ of mandate, and hence is a part of the judgment roll. The court considered the matter as a trial "de novo" and reviewed the transcript. No additional evidence was offered. A fair summary of the facts follows:

Respondent has been in the real estate business in San Francisco for many years. In May of 1948, he spoke to a Mr. Zimmerman about selling a portion of the latter's property for him. Zimmerman (hereafter called the seller) orally agreed that respondent could look for buyers for the property.

On June 4, the seller received a call from respondent that respondent was coming over to see him, and had obtained a buyer for the property. Respondent arrived, and produced a uniform agreement of sale and deposit receipt, dated June 2, 1948. The deposit receipt read in part as follows: "Received from Geo. Anastasi, hereinafter designated as the purchaser, the sum of One Thousand .......... ($1,000.00) DOLLARS, being deposited on account of G. A. Thirty six thousand .......... ($36,000.-) DOLLARS, lawful money of the United States of America; the purchase price of the following described property . . ." Nothing was said concerning the deposit. The seller signed the contract. At about that time the buyer, Anastasi, arrived and respondent said to him, "Well, you bought yourself a building, Mr. Zimmerman just signed the contract." The seller testified at the hearing that he would not have signed the contract had he known the deposit was a promissory note.

Respondent and his salesman, Harrison, testified that when they had talked to the buyer earlier he had asked if he should withdraw money from the bank and they said no, thinking he had a checking account and could write a check for the deposit. When the time came to close the deal the buyer disclosed that he had no checking account but stated that he had plenty of funds in the bank. It was then after 3 p. m. Under these circumstances respondent suggested that the buyer sign a demand promissory note for the deposit and this was done. The note read as follows: "On demand, for value received undersigned Geo. Anastasi promise to pay to ST. GERMAIN & Co., the sum of $1,000.00. This note being in lieu of check or cash deposit on account of agreement of sale of this date,

entered into by the parties. Said deposit subject to terms of agreement.''

The buyer said that the Bank of America, Columbus branch, would back him up, and that he would meet respondent there the following Monday morning. Respondent was there but the buyer never showed up. Thereafter, respondent attempted unsuccessfully to have the buyer carry out the contract.

The seller did not learn the nature of the deposit until June 18, when, upon inquiring at respondent's office to see what was holding up the transaction, he learned that respondent was having difficulty in reaching the buyer, and was informed that the down payment was a promissory note which had been temporarily misplaced by respondent, and that the amount of the deposit had not been increased to 10 per cent, as was required by the contract. In spite of these things the seller said he was still willing to go through with the deal if the buyer was also willing.

When respondent finally got in touch with the buyer, the latter refused to go through with the contract. The seller testified that after he signed the contract he received calls from other persons about the property but turned them down on the assumption the place was sold. Thereafter respondent paid the seller the sum of $375 although the promissory note had not yet been collected. Although the seller attempted to withdraw the complaint he had filed against respondent with the commissioner, the latter went ahead with the hearing on that complaint.

### The Real Estate Law Involved

Section 10176 of the Business and Professions Code (the Real Estate Law) provides that the commissioner on his own motion may, and if any person files a verified complaint, shall, investigate the actions of any person ''engaged in the business or acting in the capacity of a real estate licensee'' and may temporarily or permanently revoke a real estate license where the licensee has been guilty of '' (a) Making any substantial misrepresentation . . . (i) Any other conduct, whether of the same or a different character than specified in this section, which constitutes fraud or dishonest dealing.'' The commissioner found that respondent's action in failing to disclose to his principal that the $1,000 mentioned in the deposit receipt as having been received from the buyer was not cash but a non-

negotiable promissory note to respondent, violated both subdivisions (a) and (i) above set forth.

### FINDINGS OF THE COURT

The court, exercising its independent judgment on the evidence as shown in the transcript, made the following finding: "It is true that frequently the real estate profession accepts a note or a check from a prospective buyer without divulging the same to the seller and that the petitioner while acting as the agent for the sellers took the responsibility and stood good for the credit and that he issued and adjusted the payment of a portion of the forfeited deposit to the said Zimmermans."

Assuming, without deciding, that if there were a custom of the real estate profession to accept nonnegotiable promissory notes as payment in real estate transactions without disclosure to the principal, such a custom would excuse an action which would otherwise constitute a violation of the Real Estate Law, it becomes necessary to determine if there is any evidence in the record to support the court's finding that such a custom exists. We have carefully read the record. There is no evidence to support it. There is evidence to support that part of the finding which states that *checks* are customarily accepted by brokers in real estate transactions, in place of cash, but the only evidence on the subject of *promissory notes* is the testimony of respondent: "Q. Well, then, you have had occasion to be in this business for many years? A. Yes. Q. And are familiar with all the customs and uses of the business or profession, especially in your particular office? A. Yes sir. Q. And you are familiar with how the business is carried on in the City and County of San Francisco, having been in that business all these years; is that right? A. Yes." No question was then asked him as to whether there was a custom concerning the acceptance of promissory notes. Later he gave the following testimony: "Q. Let me ask you this. In your forty years in the business is that a custom in transactions? At this time if the client hasn't got the money or a checking account, to take a demand note? A. It has been a number of times in my experience; always successfully. Q. This is the first time it has fallen down in your experience? A. Yes . . ." This, of course, was not testimony that there was any such custom in the real estate business generally. At most it was merely testimony that respondent had done it a number of times successfully. Of course, custom is not proved by the acts

of the individual in question, but by proof of the practices of persons in that profession generally. (25 Cal.Jur. 418; *People* v. *Caldwell*, 55 Cal.App.2d 238 [130 P.2d 495].) Moreover, even assuming that this was evidence of a custom to accept notes, it does not even purport to show that such custom, if it exists, includes the failure to divulge such acceptance to the principal. No such custom was proved and hence the court's finding on that subject must fall.

RESPONDENT'S ACT VIOLATED THE REAL ESTATE LAW

The court made the following finding: "It is true that the petitioner did not intend to nor did mislead the sellers and it is true that the petitioner did not act in a fraudulent nor dishonest manner in his dealings with the said sellers." We agree with such finding insofar as intentional fraud or dishonesty is concerned. The commissioner recognized such fact by making the suspension a nominal one. However, in spite of the fact that respondent acted in good faith in the matter, he still violated the spirit and letter of the Real Estate Law. It is a well known fact that prior to the enactment of this law, there were a considerable number of persons engaged in the real estate business who were carrying on that business in an unethical manner, and that one of the purposes of the law was to raise the standards of that profession and to require its members to act fairly and ethically with their clients. Some of the things which brokers had done theretofore, and which were not necessarily illegal or unethical, were prohibited in the interests of protecting the public. Thus, commingling the money or other property of his principal with his own is expressly prohibited. There were many brokers, prior to the enactment of the law, who placed moneys received for their clients in their personal accounts, and yet who scrupulously paid their clients every cent coming to them. It was not that commingling moneys meant necessarily that the client would be defrauded, but that such a practice might result in fraud or injury to the client. So it is with the undisclosed acceptance of a promissory note. In this case, the broker was well able to make good the full amount of the note had the seller insisted. But the possibilities of fraud, and of injury to a seller by the undisclosed acceptance of a promissory note are unlimited. In the first place, the seller is entitled to know before entering into a binding obligation to tie up his property by an agreement to sell, that for some reason the buyer either cannot or will not

put up cash. He, rather than his broker, should determine whether the reason for the buyer's not paying cash is satisfactory. He, rather than his broker, should determine whether he is satisfied that a promissory note be accepted as a payment, even though the broker stands ready, as here, to guarantee its payment. For us to hold that a broker may accept a promissory note as payment to his principal, without disclosure, is not a violation of the law, would be to countenance a practice which is equally as dangerous as the commingling of money.

In this case, the violation of subdivision (a), "misrepresentation," and subdivision (i), conduct which "constitutes fraud or dishonest dealing" was not intentionally done. The misrepresentation and dishonesty were passive rather than active. When the broker showed the seller the deposit receipt reading "Received from . . . the purchaser, the sum of One Thousand . . . . . . . . . ($1,000.00) DOLLARS, being deposited on account of . . . the purchase price," etc., signed by respondent as agent for the seller, such act was a representation that the agent had received that much money for his principal. The seller had the right to believe that the person he was asked by his own broker to enter into an agreement with, was able to and did put up one thousand *dollars* (i. e., money), and that if the buyer for any reason not chargeable to the seller refused to go on with his agreement, there was that much of the buyer's money to be forfeited and kept by the seller. But when a promissory note is accepted, the money is not there to be kept. The seller has a lawsuit on his hands to collect on the note. He, at least, is entitled to know from his own agent that that might be the situation before he signs the agreement of sale.

Respondent's testimony shows that the custom in real estate transactions is for the agent to accept checks in payment of the purchase price of real property. Whether it is the custom not to divulge to the seller principal that the down payment is so made does not appear. Assuming that the custom goes that far, it is a long way from establishing a custom to accept promissory notes, as there is a great difference between a check and a note. One of the most important differences is that when a person gives a check he represents that he has the money in the bank to cover it, and that the bank will pay the amount called for. (19 Cal.Jur. 948.) Moreover, if he does not have the money in the bank it may constitute a crime. (Pen. Code, § 476a.) A note, even one

payable on demand, makes no such representation, and the failure to pay when presented is not a crime. In modern business checks are universally accepted as money; promissory notes are not.

" 'The law of California imposed on . . . the real estate agent the same obligation of undivided service and loyalty that it imposes on a trustee in favor of his beneficiary. Violation of his trust is subject to the same punitory consequences that are provided for a disloyal or recreant trustee. (*King* v. *Wise*, 43 Cal. 628.)' (*Langford* v. *Thomas*, 200 Cal. 192, 196 [252 P. 602].) Such an agent is charged with the duty of fullest disclosure of all material facts concerning the transaction that might affect the principal's decision. [Citing many cases.]" (*Rattray* v. *Scudder*, 28 Cal.2d 214, 222 [169 P.2d 371, 164 A.L.R. 1356].)

Respondent has cited no case supporting his contention that the undivulged acceptance of a promissory note as here is not a violation of the law. He has cited cases involving situations where as between a debtor and the agent's principal, it has been held that the agent's acceptance of a check constitutes payment to the principal. To the same effect is *Indemnity Ins. Co.* v. *Watson*, 128 Cal.App. 10 [16 P.2d 760], as to the acceptance by the agent of a note upon which he promptly secured cash and which note was eventually paid. There the court said: "In California the general rule which prohibits payment to an agent authorized to collect in any form other than money has been relaxed to permit payment by check. (*California Stearns Co.* v. *Treadwell*, 82 Cal.App. 553 [256 P. 242].) On principle, no good reason appears why the relaxation should not be extended as stated in the above-quoted language from Corpus Juris to include payment by note where, as here appears, money or its equivalent in bank credit was immediately secured by the agent through sale of the note which upon maturity was paid in full by the maker." (P. 18.) Under certain circumstances it has been held that the setting off of an agent's indebtedness against that of an indebtedness to his principal constitutes payment. (*Stuyvesant Ins. Co.* v. *Sussex Fire Ins. Co.*, 90 F.2d 281.) In none of these cases was the agent impliedly representing to his principal, as here, that he had received money. More important, in none of them was it a situation in which, at the very inception of the agreement into which the principal was entering, the true facts were concealed from him by his agent.

*Jones* v. *Real Estate Commissioner,* 80 Cal.App.2d 592 [182 P.2d 289], is not in point here. There the appellate court compelled the commissioner to reinstate the broker's license, not because the alleged misrepresentations did not amount to unfair dealing, but because it found that there was no evidence showing such misrepresentations were made.

 Respondent contends that as he received no advantage from his failure to disclose he did not violate the law. The law, however, does not make the securing of an advantage an element. Respondent also contends that before anyone could be found guilty of violating the law by accepting a promissory note as a down payment without divulgence, the Legislature must first amend the Real Estate Law prohibiting such action or at least the commissioner must promulgate a regulation prohibiting such action. There does not have to be any such action, either by the Legislature or the commissioner, to prohibit what is already prohibited by the law, namely, misrepresentation and dishonest dealing. Perhaps had the evidence established a long-continued custom of the profession of acceptance of notes without divulgence, a situation might have existed which would require, as a practical matter, a notice by the commissioner to all engaged in the real estate business to desist from that practice before a crackdown should take place. However, as heretofore pointed out, there is no evidence of such custom in this case. Moreover, all real estate brokers who are conscious of their ethical obligations to their clients should know that this practice is not safe or ethical.

 A real estate broker, like a trustee, has an affirmative duty to disclose all material facts which might influence the decision of his principal; the fact that the prospective buyer cannot or does not make the down payment on the purchase of real property in money but by a promissory note is a material fact which the seller is entitled to know before agreeing to sell; here the agent failed to make such disclosure and hence violated the Real Estate Law as above set forth.

The judgment is reversed.

Peters, P. J., concurred.

WARD, J.—I dissent.

The problem herein presented to this court is not the sufficiency of the evidence to sustain the determination of the issues involved and the reasonableness of the penalty imposed by the real estate commissioner. Upon the issuance of a writ

of mandate those questions have been adjudicated in the trial de novo in the superior court. The task assigned to this court is to consider the findings of the superior court and examine the evidence in the light of the sufficiency thereof to sustain such findings,—in brief, to conclude if the trial court was correct in determining that under the provisions of section 10176 of the Business and Professions Code there was no substantial misrepresentation (subd. (a)) and no fraud or dishonest dealing (subd. (i)).

Any statement which does not place the buyer or the seller at a disadvantage should not be classified as a "substantial misrepresentation." Here it is not the making of a statement but the failure to make all the details known to the seller that is the basis of the charge of dishonesty. It is not claimed that any statement made or not made was with intent to defraud or take an undue advantage of the seller. The evidence does not disclose that the seller was in fact injured. The seller, with reference to a conversation had with an attaché of the agent's office, testified as follows: "As far as I am concerned, I even told her so—as far as I am concerned I will still stand behind the deal even if his time limit had expired to increase his deposit on the purchasing price."

In support of the claim that the agent was dishonest, the real estate commissioner states that it is not the custom to accept a promissory note in lieu of a check or cash as a deposit on the purchase price. There is the testimony of the agent that in some cases he had adopted the practice and custom of accepting promissory notes. There was no cross-examination to indicate that the testimony to that effect was untrue and no evidence was presented indicating it was not a custom followed under certain circumstances by agents generally. In this connection the trial court stated: "To the contrary, it only appears that the agent followed a practice that has been carried on by brokers, and believed that he was accepting the note for cash and was responsible to the seller therefor. In view of these facts there is no basis whatsoever for the findings and decision made by the Commissioner. They are not supported by the evidence." There is substantial evidence to support the finding of the trial court. This court may not revalue, nor substitute its opinion for, the findings of the trial court when such findings are supported by the evidence.

The trial court may have concluded that although the penalty imposed by the period of suspension indicated only a

technical, if any, violation of the act, the findings and "DETER-MINATION OF ISSUES PRESENTED," as set forth by the commissioner, branded the agent as a dishonest agent, a stigma that never could be lived down. The trial court may have concluded that the power of revocation and suspension of a license to practice a profession or conduct a business should be used only in "justifiable cases" (*Jones* v. *Real Estate Commissioner*, 80 Cal.App.2d 592, at p. 600 [182 P.2d 289]).

I am satisfied that the order of the trial court should be affirmed.

A petition for a rehearing was denied March 4, 1950, and respondent's petition for a hearing by the Supreme Court was denied April 3, 1950. Shenk, J., and Carter, J., voted for a hearing.