Susie V. WATWOOD, Petitioner,

v.

REAL ESTATE COMMISSION of the District of Columbia, Respondent.

No. 3351.

District of Columbia Court of Appeals.

Argued Nov. 18, 1963.

Decided Jan. 8, 1964.

Rehearing Denied Jan. 28, 1964.

H. Keith Eisaman, Washington, D. C., with whom Landon Gerald Dowdey, Washington, D. C., was on the brief, for petitioner.

David P. Sutton, Asst. Corp. Counsel, with whom Chester H. Gray, Corp. Counsel, and Hubert B. Pair, Asst. Corp. Counsel, were on the brief, for respondent. Milton D. Korman, Principal Asst. Corp. Counsel, also entered an appearance for respondent.

Before HOOD, Chief Judge, and QUINN and MYERS, Associate Judges.

QUINN, Associate Judge.

This is an appeal from an order of the Real Estate Commission suspending petitioner's real estate broker's license upon a finding that she had violated Code Section 45–1408(g) and (h).[1]

---

1. "The Commission * * * shall have the power to suspend or to revoke any license issued under the provisions of this chapter * * * where the licensee, in performing or attempting to perform any of the acts mentioned herein has—
  * * *
  "(g) Failed, within a reasonable time, to account for or to remit any money, valuable documents, or other property coming into his possession which belong to others;
  "(h) Demonstrated such unworthiness or incompetency to act as a real-estate broker or real-estate salesman or a business-chance broker or a business-chance salesman as to endanger the interests of the public."

Briefly, the facts are as follows. Petitioner, pursuant to an agreement with Mrs. Cora Everson, assumed the duties of managing the latter's apartment building. Among other things, petitioner was to secure tenants, collect rents, and pay a certain trust obligation incurred by Mrs. Everson in the ownership of the property. During the month of May 1959 Mrs. Everson notified petitioner of her desire to terminate the agreement. The agreement provided for ninety days' notice. In June, before the termination date, petitioner sent Mrs. Everson an invoice claiming a broker's commission of $1,212.50 on the sale of another property owned by Mrs. Everson. To solidify her claim, petitioner deducted $1,212.50 in the June accounting and thereby refused to remit the balance on hand of $566.25 which would otherwise have been owing to Mrs. Everson. Subsequently, Mrs. Everson brought suit for the $566.25 and petitioner counterclaimed for the $1,212.50. The issues were submitted to a jury which returned a verdict in Mrs. Everson's favor and against petitioner on the counterclaim. We affirmed. Watwood v. Everson, D.C.Mun.App., 181 A.2d 469 (1962).

In 1963 the Commission filed charges against petitioner, held a public hearing and entered findings of fact. The most important finding stated in part:

"* * * instead of making payments of the aforesaid obligations of Mrs. Everson and then remitting the balance to Mrs. Everson as per said agreement [petitioner], did convert to her own use the sum of $566.25."

Nevertheless, the $566.25 had been secured by a supersedeas bond and was promptly paid to Mrs. Everson at the conclusion of the litigation.

This appeal presents the following questions: (1) Did petitioner have a legal right to set off her claim to a commission against the rent account; and (2) Assuming petitioner acted in "good faith," is "good faith" a defense to a violation of Code Section 45–1408(g)?

■ The short answer to the first question is that an agent who receives rent money from tenants is a trustee of such funds,[2] and cannot set off a personal debt owed him by the principal against payments due under the trust.[3] Equity treats the fiduciary as holding the res in a separate capacity.[4] Here the subject matter of the management agreement was Mrs. Everson's apartment building while the subject matter of petitioner's claim was another property governed by a separate contract. As such they were unrelated for the purpose of allowing petitioner to set off her claim against the rent account.

■ Petitioner contends that the answer to the second question is controlled by our statement that the purpose of the Real Estate Brokers' Act is "to protect the public against fraud in real estate transactions."[5] Petitioner would have us apply this statement so as to deny the Commission the

2. Robbins v. Roumel, D.C.Mun.App., 138 A. 2d 922, 923 (1958); Jay v. General Realties Co., D.C.Mun.App., 49 A.2d 752, 755 (1946).

3. Garrison v. Edward Brown & Sons, 25 Cal.2d 473, 154 P.2d 377, 379 (1945) ("* * * a fiduciary cannot set off claims owed him in his personal capacity against obligations that he assumes as a trustee."); First Nat. Bank of Waynesboro v. Johnson, 183 Va. 227, 31 S.E.2d 581, 585 (1944) ("a trustee cannot set off against the trust fund held by him his individual demand against the creator of

the trust."); Wesolowski v. Erickson, 5 Wis.2d 335, 92 N.W.2d 898, 902 (1958) ("* * * nor should one who is sued in his legal capacity as a representative of another be allowed to counterclaim on the basis of claims due him individually from the plaintiff.").

4. Topas v. John MacGregor Grant, Inc., 18 F.2d 724, 726 (2d Cir. 1927), cert. denied 274 U.S. 754, 47 S.Ct. 766, 71 L.Ed. 1334.

5. Eberman v. Massachusetts Bonding & Ins. Co., D.C.Mun.App., 41 A.2d 844, 845 (1945).

power to revoke or suspend a license where a broker has acted in "good faith." [6] A review of the legislative history surrounding the act indicates that one of the intended grounds for revocation or suspension was "failure to account for money or property belonging to others." [7] In a comparable statute, it has been recognized that "bad faith" is not a prerequisite to violating a provision regarding commingling of funds.[8] In an analogous situation we have said that the question is whether the broker failed to give her principal that scrupulous fidelity which the law demands.[9] We hold, therefore, that petitioner's refusal to remit monies belonging to her principal constituted a violation of Code Section 45–1408(g).[10] Her "good faith" under these circumstances is not a defense but a fact to be considered in mitigation of punishment.[11] In this regard we note that petitioner's suspension was only for thirty days.

■ Finally, we find no merit in petitioner's contention that her constitutional right of free access to the courts has been denied. Petitioner was never prevented from remitting the monies due Mrs. Everson and asserting her claim to the commission in a separate complaint. It was her choice of legal self-help which brought forth the Commission's charges. If anything, the successive appeals have underlined her right of free access to the courts.

Affirmed.

6. The record discloses that petitioner's claim was pursued upon the advice of a member of the bar.

7. S.Rep. No. 1173, 75th Cong., 1st Sess. 3–4 (1937).

8. Hogg v. Real Estate Com'r, 54 Cal.App. 2d 712, 129 P.2d 709, 712 (1942).

9. Jay v. General Realties Co., supra note 2; compare St. Germain v. Watson, 95 Cal.App.2d 862, 214 P.2d 99, 103 (1950).

10. Since there is substantial evidence to support the order of suspension under Code Section 45–1408(g), we have not proceeded to examine whether the order is similarly supportable under Code Section 45–1408(h). Burch v. Board of Commissioners, D.C.App., 191 A.2d 604 (1963).

11. Hime v. Florida Real Estate Commission, Fla., 61 So.2d 182, 183 (1952).