STANLEY LOWE, STANLEY LOWE REALTY, INC.,
AND WILLIAM LINDNER, APPELLANTS, *v.* STATE OF
NEVADA, DEPARTMENT OF COMMERCE, REAL
ESTATE DIVISION, AND NEVADA REAL ESTATE
ADVISORY COMMISSION, RESPONDENTS.

No. 6972

November 5, 1973                    515 P.2d 388

*David Abbatangelo* and *Robert Farkas*, of Las Vegas, for
Appellants.

*Beckley, DeLanoy & Jemison, Chartered,* of Las Vegas, for
Respondents.

## OPINION

By the Court, ZENOFF, J.:

Stanley Lowe, a licensed real estate broker in Las Vegas,
and William Lindner, one of Lowe's salesmen, were accused
of violating NRS 645.630, subsections 1, 14, 18 and 19, and

after a hearing before the Nevada Real Estate Advisory Commission were ordered suspended for 60 days from the pursuit of real estate business.[1]

The accusation arose from the proposed sale of certain property in Clark County owned by Wilbur K. and Marjorie L. Sullivan. They had listed the property with the realty firm of Sala & Ruthe, licensed real estate brokers who are members of the realtors multiple listing service, as were these appellants. Lindner and Mary Nicosia, whom he knew as a friend and a business acquaintance in Las Vegas, signed an earnest money agreement on the property which recited that the sum of $1,-000.00 was received from Mary Nicosia as a deposit on the transaction. Neither Lowe nor Lindner told Sala and Ruthe or the Sullivans that the $1,000.00 was by postdated check instead of cash. They did not identify the nature of the deposit, only the fact of it.

Mrs. Nicosia stopped payment on the check and withdrew from the purchase. When Mr. Sullivan learned of that he demanded $500.00 from Lowe which according to the terms of the earnest money agreement he was entitled to as one-half of the deposit. His demand was refused by Lowe whereupon Sullivan filed a complaint against Lowe and Lindner before the real estate commission.

Lowe and Lindner explained at the hearing before the real estate advisory commission that Mrs. Nicosia had been willing to give a current check at the time of the transaction, October 24, but requested to give a postdated check dated November 1 because she cleared her records every month and wanted her records clear as of that date. Lowe testified that he saw nothing wrong or out of line in taking the postdated check since he

---

[1]NRS 645.630 Grounds for disciplinary action against licensees. The commission shall have the power to suspend, revoke or reissue, subject to conditions, any license issued under the provisions of this chapter at any time where the licensee has, by false or fraudulent representation, obtained a license, or where the licensee, whether or not acting as a licensee, is deemed to be guilty of:

1. Making any substantial misrepresentation.
* * * *
14. Negligence, or failure to disclose or to ascertain and disclose to any person with whom such licensee is dealing, any material fact, data or information concerning or relating to the property with which such licensee is dealing, which such licensee knew.
* * * *
18. Being unworthy or incompetent to act as a real estate broker or salesman in such manner as to safeguard the interests of the public.
19. Any other conduct, whether of the same or different character from that hereinbefore specified, which constitutes improper, fraudulent or dishonest dealing.

knew it to be a promissory note anyway and gave no further thought to telling the seller or Sala and Ruthe.

From the record there is no indication of willful fraud or nondisclosure. Both Lowe and Lindner freely explained the details of the transaction to the commission without the presence of counsel, nor did they see the need for one because, as they stated, they could see no reason to withhold anything. Lowe related that near the end of the month of October he deposited the check for clearance on November 1 but then Mary Nicosia informed him that she didn't want to go through with the purchase. A week later the check was returned because she had stopped payment on it.[2]

The commission ordered appellants' licenses suspended for 60 days for violating the enumerated sections of NRS 645.630. Upon the facts of this case we fail to see any violation and absent a violation the trial court has abused its discretion in upholding the findings and conclusions of the real estate commission. For unwisely failing to specify the nature of the deposit Lowe and Lindner might well deserve a rebuke but there was no violation of a rule of the real estate commission or statutes that licensees can receive only cash for deposits. While a "deposit" may be assumed to be by cash, the respondent has not promulgated an appropriate rule which they can now claim was broken. Upon the facts of Flanders v. State Department of Commerce, 87 Nev. 303, 486 P.2d 499 (1971), we refused to support a revocation of the licensee's license on failure to maintain proper records and other technical violations. Similarly, in In re Reno, 57 Nev. 314, 64 P.2d 1036 (1937), this court modified the order of the State Board of Medical Examiners revoking a medical certificate because the conduct complained of was not shown to be willful and intentional. Even in Randono v. Nevada Real Estate Commission, 79 Nev. 132, 379 P.2d 537 (1963), this court stated while reaffirming the general rule that we will not interfere with the exercise of a trial court's discretion if the record justifies that court ruling one way or the other, but that we could and would overturn the trial court if the record does not support the trial court's result at all.

To the contrary in this case, there was no failure to make known information that the licensee may have relating to the property such as, we presume, a proposed highway, shopping center, school or any facts within the knowledge of the licensee but not such as would necessarily be a matter of public record,

---

[2]Lowe testified that he had commenced suit on the check but the status of that litigation does not appear.

such as defects of title. This deposit concerns the details of the transaction and bears no relevance to the property. Thus, there was no breach of subsection 14.

Subsections 18 and 19, also found to have been violated, are open-end and catch-all, certainly vague where specificity is required, but in any event no facts appear in this case to show fraud or dishonesty or impropriety. The commission has made what it terms as a violation of subsection 1 into a violation of subsections 18 and 19 as well. No other facts are shown that would be indicated to apply to subsections 18 and 19. As they are presently stated, any conduct that might offend the personnel of the commission, such as personality clashes or business disagreements, can lead to oppressive use of subsections 18 and 19. Without more containment, in their present form they are a dangerous instrumentality when the rights of individuals to engage in business are involved. Cf. Black v. State Bar of California, 368 P.2d 118 (Cal. 1962). At the most, as we have already hinted, failure to distinguish the deposit between cash and a postdated check was nothing more than unwise in the absence of a specific directive otherwise.

The trial court abused its discretion when it upheld the findings and conclusions of the real estate advisory commission.

These proceedings are reversed and dismissed.

GUNDERSON and BATJER, JJ., concur.

MOWBRAY, J., with whom THOMPSON, C. J., agrees, dissenting:

Respectfully, I dissent.

This is an appeal from a judgment of the district court affirming the decision, findings of fact, and conclusions of law of the Nevada Real Estate Advisory Commission in a proceeding brought by the Real Estate Division, Department of Commerce, State of Nevada, against the appellants, Stanley Lowe, Stanley Lowe, Inc., and William Lindner, to revoke or suspend their licenses under the provisions of chapter 645 of Nevada Revised Statutes. The complaint charged the appellants with violating NRS 645.630, subsections 1, 14, 18, and 19.[1]

---

[1]NRS 645.630, in relevant part:

"*645.630 Grounds for disciplinary action against licensees.* The commission shall have the power to suspend, revoke or reissue, subject to any conditions, any license issued under the provisions of this chapter at any time where the licensee has, by false or fraudulent representation, obtained a license, or where the licensee, whether or not acting as a licensee, is deemed to be guilty of:

The Commission, after a full hearing, and the district court, on review, found that the appellants had violated the aforementioned subsections of NRS 645.630 and ordered that the appellants' licenses be suspended for a period of 2 months. After reviewing the transcript of the proceedings below, I find that the evidence supports the ruling of the district court, and I therefore would affirm the order of suspension.

1. *The Facts.*

The appellants conduct their real estate brokerage business in corporate form as Stanley Lowe, Inc., with Stanley Lowe as the officer-broker and William Lindner being a licensed salesman.

In August 1969, Sala & Ruthe, licensed brokers, who, like the appellants, are members of the Multiple Listing Service,[2] obtained a listing on a residence owned by Mr. and Mrs. Wilbur K. Sullivan. On or before October 24, 1969, Salesman Lindner showed the listed property to Mr. and Mrs. Nicosia, and Mrs. Nicosia signed a written offer and acceptance agreement on the same day. Lindner subsequently signed the agreement on behalf of his firm and presented it to Broker Lowe. The agreement provided, in part:

"Las Vegas, Nevada, October 24, 1969.

"RECEIVED FROM MARY NICOSIA the sum of $ ONE THOUSAND............($ 1000.00) DOLLARS, . . ."

At about the same time, appellants advised Sala & Ruthe that they had received an offer and "told them we [appellants] got a thousand dollars." In truth and fact they had not received a thousand dollars from the buyers, but they had received a check postdated to November 1, 1969, for that amount.

---

"1. Making any substantial misrepresentation.
"...

"14. Negligence, or failure to disclose or to ascertain and disclose to any person with whom such licensee is dealing, any material fact, data or information concerning or relating to the property with which such licensee is dealing, which such licensee knew.
"...

"18. Being unworthy or incompetent to act as a real estate broker or salesman in such manner as to safeguard the interests of the public.

"19. Any other conduct, whether of the same or a different character from that hereinbefore specified, which constitutes improper, fraudulent or dishonest dealing."

[2]The Multiple Listing Service is a group of brokers who, by agreement, make listings taken by one, available to all others. If a sale is consummated by any member, the commission is shared by both the listing and the selling brokers.

The Sullivans, owners of the property, were notified of the offer and acceptance and promptly accepted the same.

Broker Lowe deposited the check on or about October 28, 1969; on or about October 31, 1969, the buyers advised Lowe that they did not want the home, and they stopped payment on the check. The check was returned to Lowe on or about November 7, 1969, stamped "Payment Stopped."

The sale never closed, and in spite of the sellers' demand that Lowe pay them one-half of the $1,000 deposit as provided in the offer and acceptance agreement, Lowe refused to do so.

During the hearing before the Commission, Lowe was frank to admit that a postdated check was in essence a promissory note, and Seller Wilbur K. Sullivan testified that if he had been told the check was postdated he would not have signed the offer and acceptance agreement.

2. *The Burden of Proof.*

The statute allowing an appeal from a ruling of the Commission does not provide for a trial de novo. The burden of proof is on the appellant, and while the court may receive and consider any relevant evidence concerning the action of the Commission, its inquiry shall be limited solely to a consideration of whether there has been an abuse on the part of the Commission in arriving at its decision. NRS 645.760, subsection 3.[3] In other words, the court has the duty, not of reviewing the evidence to reach its own conclusion, but, rather, of affirming the decision of the Commission if the record contains substantial evidence to support that decision. Cf. Miller v. Munger, 88 Nev. 405, 498 P.2d 1336 (1972); Miller v. West, 88 Nev. 105, 493 P.2d 1332 (1972).

In interpreting the appellate function, as here involved, under NRS 645.760, this court held in Randono v. Nevada Real Estate Comm'n, 79 Nev. 132, 137, 138, 379 P.2d 537, 539, 540 (1963):

". . . The action of the Commission is clothed with the presumption of validity and is supported by substantial evidence . . .

---

[3]NRS 645.760, subsection 3:

"Upon the hearing of the appeal, the burden of proof shall be upon the appellant, and the court shall receive and consider any pertinent evidence, whether oral or documentary, concerning the action of the commission from which the appeal is taken, but shall be limited solely to a consideration and determination of the question whether there has been an abuse of discretion on the part of the commission in making such decision."

". . .

". . . That we as triers of the fact might have reached a different conclusion as to the penalty to be imposed is of no significance on this appeal when we cannot say, as a matter of law under the facts of this case, that there has been an abuse of discretion on the part of the Commission.

". . . '. . . [T]his court is not free to substitute its own discretion as to the matter, even if it were inclined so to do.' [quoting from Macfarlane v. Department of Alcoholic Beverage Control, 330 P.2d 769, 773 (Cal. 1958)]." See also Holland Realty Investment Co. v. State Dep't of Commerce, Real Estate Div., 84 Nev. 91, 436 P.2d 422 (1968).

3. *The Broker's Duty.*

This court, in Holland Realty Investment Co., *supra,* held that a real estate licensee is a fiduciary and that he owes the duty of absolute honesty and fullest disclosure to his client. The court said, 84 Nev. at 97, 98, 436 P.2d at 426, in defining that duty:

"Such an agent [broker] is charged with the duty of fullest disclosure of all material facts concerning the transaction that might affect the principal's decision. Langford v. Thomas, supra [252 P. 602 (Cal. 1926)]; Williams v. Lockwood, 166 P. 587 (Cal. 1917); Feckenscher v. Gamble, 85 P.2d 885 (Cal. 1938); Currry v. King, 92 P. 662 (Cal. 1907); Silver v. Logue, 16 P.2d 183 (Cal. 1932); Jolton v. Minister-Graf & Co., 128 P.2d 101 (Cal. 1942); Baird v. Madsen, 134 P.2d 885 (Cal. [App.] 1943).

". . .

"In the language of the Restatement of Agency § 390, Comment a: 'Before dealing with the principal on his own account * * * an agent has a duty, not only to make no misstatements of fact, but also to disclose to the principal all material facts fully and completely. A fact is material * * * if it is one which the agent should realize would be likely to affect the judgment of the principal in giving his consent to the agent to enter into the particular transaction on the specified terms. Hence, the disclosure must include not only the fact that the agent is acting on his own account * * *, but also all other facts which he should realize have or are likely to have a bearing upon the desirability of the transaction from the viewpoint of the principal.' Rattray v. Scudder, supra [169 P.2d 371 (Cal. 1946)]."

Applying the rule of full disclosure to the case at bar, it is clear that the appellants failed to abide by the standards prescribed in the statute and by this court. When a licensee asks

a seller to accept an offer for his property and represents to the seller that the buyer has made a $1,000 deposit, where in truth and fact the buyer has offered a postdated check that is nothing more than a promise to pay in the future, that licensee has failed to meet the prescribed rule of full disclosure prevailing in such cases. St. Germain v. Watson, 214 P.2d 99 (Cal.App. 1950), is in point. There, instead of a postdated check, the broker had received a note payable at a future time, rather than a cash down payment, and failed to tell the seller. The court affirmed a suspension of the broker's license, stating the facts as follows, 214 P.2d at 101:

"On June 4, the seller received a call from respondent [broker] that respondent was coming over to see him, and had obtained a buyer for the property. Respondent arrived, and produced a uniform agreement of sale and deposit receipt, dated June 2, 1948. The deposit receipt read in part as follows: 'Received from Geo. Anastasi, hereinafter designated as the purchaser, the sum of One Thousand................................... ($1,000.00) Dollars, . . .' Nothing was said concerning the deposit. The seller signed the contract. . . . The seller testified at the hearing that he would not have signed the contract had he known the deposit was a promissory note.

". . .

"The seller did not learn the nature of the deposit until June 18, when, upon inquiring at respondent's office to see what was holding up the transaction, he learned that respondent was having difficulty in reaching the buyer, and was informed that the down payment was a promissory note. . . .

". . .

"When the respondent finally got in touch with the buyer, the latter refused to go through with the contract. . . ."

The court stated the problem as follows, 214 P.2d at 101:

"The main question presented is whether the acceptance by a real estate broker of a nonnegotiable promissory note as the down payment on an agreement to purchase real property without informing the seller, who is the broker's client, of that fact, constitutes a violation of section 10176, subdivisions (a) and (i) (formerly subdivision (f)), Division 4, Business and Professions Code. [footnote omitted]"[4]

The court then held, 214 P.2d at 103:

". . . It is a well known fact that prior to the enactment of this [Real Estate] Law, there were a considerable number of

[4]These sections are substantially identical with NRS 645.630, subsections 1 and 19, two of the subsections involved here.

persons engaged in the real estate business who were carrying on that business in an unethical manner, and that one of the purposes of the Law was to raise the standards of that profession and to require its members to act fairly and ethically with their clients. Some of the things which brokers had done theretofore, and which were not necessarily illegal or unethical, were prohibited in the interests of protecting the public. Thus, commingling the money or other property of his principal with his own is expressly prohibited. . . . It was not that commingling moneys meant necessarily that the client would be defrauded, but that such a practice might result in fraud or injury to the client. So it is with the undisclosed acceptance of a promissory note. In this case, the broker was well able to make good the full amount of the note had the seller insisted. But the possibilities of fraud, and of injury to a seller by the undisclosed acceptance of a promissory note are unlimited. In the first place, the seller is entitled to know before entering into a binding obligation to tie up his property by an agreement to sell, that for some reason the buyer either cannot or will not put up cash. . . ."

". . . The seller had the right to believe that the person he was asked by his own broker to enter into an agreement with, was able to and did put up one thousand *dollars* [emphasis in the original] (i.e., money), and that if the buyer for any reason not chargeable to the seller refused to go on with his agreement, there was that much of the buyer's money to be forfeited and kept by the seller. . . ."

Appellants argue that, because (1) a postdated check is still a negotiable instrument and (2) merchants often accept such checks, appellants have not violated the provisions of chapter 645 of NRS.

It is true that some merchants are willing to accept postdated checks under certain circumstances, i.e., when they have confidence in the maker. There is no showing in the instant case that the seller knew the maker or that he had confidence in him. But more importantly, it was the appellants, and not their principal, who made the decision to accept the postdated check without authority from or knowledge of their principal.

As the California court said in St. Germain v. Watson, *supra,* 214 P.2d at 103:

". . . He [The principal], rather than his broker, should determine whether the reason for the buyer's not paying cash is satisfactory. He, rather than his broker, should determine whether he is satisfied that a promissory note [postdated check] be accepted as a payment. . . ."

Finally, appellants argue that the decision is wrong in finding that acceptance of a check on an offer and acceptance agreement is misconduct, because it is the custom of the members of the Multiple Listing Service to do so. Assuming such to be the practice, although the record does not so show, it does not prove that such a custom exists to accept *postdated* checks.

". . . [T]he seller is entitled to know before entering into a binding obligation to tie up his property by an agreement to sell, that for some reason the buyer either cannot or will not put up cash. . . . [T]o hold that a broker may accept a promissory note [postdated check] as payment to his principal, without disclosure, is not a violation of the law, would be to countenance a practice which is equally as dangerous as the commingling of money." St. Germain v. Watson, *supra,* 214 P.2d at 103.

I conclude, therefore, that, as a matter of law, under the facts of this case the Commission has not abused its discretion. I would affirm the judgment of the district court.