■   In the Matter of DOROTHY DONATO, Petitioner, v. GEORGE K. WYMAN, as Commissioner of the New York State Department of Social Services, et al., Respondents.— Proceeding pursuant to article 78 of the CPLR to annul a determination of the Commissioner of the New York State Department of Social Services, dated July 3, 1968, which (1) found that petitioner had received cash payments from the Veterans Administration and the Social Security Administration and that a portion of said funds were still available to petitioner for her use and support and for the maintenance and support of her children; and (2) affirmed the discontinuance of public assistance by the Rockland County Department of Social Services. Proceeding dismissed and determination confirmed, without costs. Petitioner was a recipient of public assistance in the form of Aid to Dependent Children (ADC). During the period from September, 1967 to January, 1968, while she was receiving this assistance, she received certain funds from the Social Security Administration and the Veterans Administration in the total amount of $2,613. She failed to report the receipt of these funds to the local welfare agency (the respondent Rockland County Department of Social Services), which agency suspended her assistance on February 1, 1968, when it discovered her receipt of these funds. After an investigation, the assistance was discontinued on May 1, 1968, the local agency having determined that petitioner was no longer eligible for assistance, since she had available cash resources over and above her current needs. Pursuant to subdivision 2 of section 353 of the Social Services Law, petitioner appealed to the respondent New York State Department of Social Services and was accorded a " fair hearing ". She was represented by counsel and the hearing was held before a Department-appointed referee. Upon the evidence adduced at the hearing, the Commissioner determined that out of the $2,613 she had received from the Social Security Administration and the Veterans Administration the sum of $800, which petitioner had turned over to her mother, and the sum of $600, which she turned over to her sister-in-law, were still available to her for use for her support and maintenance and for the support and maintenance of her children; that the money was not given to her mother and sister-in-law in return of any loan or otherwise required to be turned over to them; that it was a purely voluntary act by petitioner and that the mother and sister-in-law are mere custodians or trustees of the funds for petitioner's benefit; and that, accordingly, the local agency had correctly discontinued assistance, since petitioner has resources available to her over and above her current needs. The sole issue for our determination is whether the decision of the State Department of Social Services was supported by substantial evidence. At the hearing, petitioner testified that she had given $800 to her mother and $600 to her sister-in-law and that these sums represented repayment of loans made by them to her. Further, it was stipulated that, had her sister-in-law (who was present at the hearing) testified, her testimony would be that during the year or so then past she received $600 from petitioner for certain moneys she had given petitioner and that she had knowledge that petitioner was receiving Veterans' and Social Security benefits. In our view, petitioner's testimony was, to say the least, sparse, vague and far from persuasive. She offered no proof whatever to establish that her mother or sister-in-law no longer had the respective funds which had been turned over to them or that they were

unable to obtain these moneys for return to petitioner. Neither the mother, who was available for appearance at the hearing, nor the sister-in-law, who was present, testified or offered any proof to establish that they no longer had the money they received and could not return it to petitioner. The basic issue on the hearing was one of credibility. The Referee, before whom the hearing was held, was the best judge of the credibility of petitioner and the weight to be given to the proof adduced. He was not bound to accept the unsupported statement of petitioner that she, in fact, owed money to her mother and sister-in-law. In evaluating credibility he could well have considered the interest of petitioner and her mother and sister-in-law in the outcome of the proceeding; the fact that petitioner had deliberately violated section 145 of the Social Services Law in failing to disclose her resources; and the fact that neither the mother nor the sister-in-law had testified on petitioner's behalf beyond the stipulation offered that the sister-in-law, if called, would have testified that petitioner had owed her money and had repaid it to the extent of $600. In our opinion, the inference could be drawn by the Referee, from all of the facts and circumstances, that no loans had in fact been made and that no money was legally owing to the mother and sister-in-law, particularly since the facts testified to were solely within the knowledge of petitioner and her mother and sister-in-law. The testimony offered by petitioner was highly self-serving. The absence of contrary testimony, with the Commissioner having no witnesses within his control with knowledge of the facts, does not make petitioner's self-serving testimony worthy of belief (*Blum* v. *Fresh Crown Preserve Corp.*, 292 N. Y. 241). In the light of the testimony that was adduced, the inference could also properly be drawn that the funds in question were still available to petitioner and that the mother and sister-in-law were merely custodians or trustees thereof for petitioner's benefit. In short, in our opinion, the circumstantial evidence and the reasonable inferences that could be drawn not only from the facts adduced but from the failure on the part of petitioner to come forward with proof, which was clearly under her control, to rebut such inferences constituted substantial evidence to support the Commissioner's determination. Rabin, Benjamin and Martuscello, JJ., concur; Brennan, Acting P. J., and Hopkins, J., dissent and vote to annul the determination and to remit the matter to the respondent Commissioner for a further hearing consistent with the following memorandum: The duty to provide adequately for those unable to maintain themselves devolves on public welfare officials by statute (Social Services Law, § 131, subd. 1). The statute itself provides for a method of review in the event a grant of aid to a dependent child is revoked (Social Services Law, § 353, subd. 2). That review takes the form, in the words of the statute, of "a fair hearing", without any further definition of the characteristics which shall accompany it. Nevertheless, the hearing must accord to the requirements of due process (cf. *Matter of Wignall* v. *Fletcher,* 303 N. Y. 435, 441). The question is whether on this record the petitioner was afforded a hearing and a determination made within the limits of due process. The uncontradicted testimony of petitioner at the hearing was that she had given $800 to her mother and $600 to her sister-in-law, both amounts representing repayment of loans made to her. It was stipulated that, if the sister-in-law had testified, her testimony would have been to the same effect. No evidence was submitted to show whether the mother and sister-in-law still had these funds and, if they did, whether petitioner had access to the funds. Notwithstanding the evidence received at the hearing, the respondent Commissioner found that "the record discloses that these funds are still available to appellant for use for her support and maintenance and the support and maintenance of her

children, and that the mother and sister-in-law are mere custodians or trustees of the funds turned over to them, for the benefit of the appellant." On the basis of these findings, the Commissioner held that the local agency had properly discontinued the grant of aid. The Social Services Law does not provide that anyone violating the provisions thereof may be removed from his status as a recipient of public assistance. The specific penalty is a criminal prosecution (Social Services Law, § 145; cf. *People* v. *Pickett*, 19 N Y 2d 170). The receipt and expenditure of outside income without disclosure by a recipient of assistance do not entitle the authorities to discontinue the assistance, unless these outside funds are still available to the recipient. Hence, the burden of proof lay on the authorities to establish that the funds received by petitioner were available to her. Otherwise, the statutory provision of a fair hearing becomes meaningless. No essential element of a fair hearing in an administrative proceeding can be dispensed with, unless waived (*Matter of Hecht* v. *Monaghan*, 307 N. Y. 461, 470). Here, the proof to support the findings was lacking and the determination based on the findings cannot stand. We note, too, the informal nature of the proceedings from the original suspension of assistance to the decision after the hearing. Thus, although section 356.4 (subd. [d], par. [5]) of the Regulations of the Department of Social Services (18 NYCRR) provides that the Referee presiding at the hearing shall transmit his findings to the Commissioner, the record is silent as to whether the Referee transmitted any findings to the Commissioner. In discharging its duty under the statute, the Department must follow the procedure which the statute prescribes; and departure from the statutory pattern renders the ultimate determination vulnerable to attack.