GEORGE E. MILLER, NEVADA STATE WELFARE ADMINISTRATOR, AND THE NEVADA STATE WELFARE BOARD, APPELLANTS, v. SARAH MUNGER, RESPONDENT.

No. 6747

July 5, 1972                    498 P.2d 1336

[Rehearing denied August 15, 1972]

*Robert List,* Attorney General, and *Margie Ann Richards,* Deputy Attorney General, for Appellants.

*B. Mahlon Brown, III,* Clark County Legal Services Program, Las Vegas, for Respondent.

---

[1]The record also reflects that the transaction was photographed in color by a Super 8 motion picture camera.

406

**OPINION**

By the Court, ZENOFF, C. J.:

This case involves the application of Sarah Munger for aid to her six dependent children pursuant to the provisions of NRS 425.010–425.250.

Sarah Munger at one time was married to Marion Munger. They had six children. Marital difficulties arose, a divorce was procured on June 12, 1969 and Sarah was given custody of the children. After making only a few support payments totaling $724.00 Marion decamped. Prior to the divorce and thereafter Sarah's sister, Lupe Morgan, had given great financial assistance to Sarah and her children.

Sarah's first application for ADC benefits was made on May 23, 1969 and denied June 7, 1969 because the assessed value ($8,782) of her home was in excess of the agency limits.

On November 20, 1969 Sarah transferred her equity in the house to her sister, Lupe Morgan, in satisfaction of the debts accumulated before and after the divorce. An allegation was made that the mortgage company had been threatening foreclosure.

Sarah made a second application on April 9, 1970. This application was denied on the basis that Sarah's "[h]ome [was] sold to settle debts which were not legally enforceable."

A third application was made on May 19, 1970 and denied June 3, 1970 on the ground that "[p]roperty [was] transferred without consideration commensurate with value of property."

As to the second denial a notice of appeal was lodged on April 30, 1970 with the Welfare Division and a request was made for a statutory fair hearing. The hearing was had on July 7, 1970 before hearing officer Vincent Fallon. Sarah was represented by her present counsel. At the hearing Sarah presented evidence of the market value of the house (between $29,000 and $30,000 less an estimated $1,000 cost to make the property salable). Next, evidence as to the financial assistance from the Morgans was presented. Several payments were made by check, but in the main no receipts were received for

the various cash advances made by the Morgans. The Morgans signed a verified statement listing $6,585.89 of advances to Sarah and the same was admitted into evidence.

The state then presented its case. No evidence was presented to rebut or impeach Lupe Morgan's notarized statement as to the total money advanced to Sarah. No evidence was presented to rebut why Sarah sold her house. Mrs. Miller, the case worker, stated that the fair market value of the house was close to $30,000 encumbered with an $18,000 mortgage. The assessed value of the house was $8,782 which exceeded the agency standard of $6,650 (since increased to $7,500). The bulk of the state's case dealt with arguments as to what constitutes a legally enforceable debt within the welfare context.

A petition for review was filed on August 17, 1970 in district court seeking judicial review of the administrative action. The hearing was had based on the administrative record before Judge Compton. Findings of fact and conclusions of law were incorporated in his decision which reversed the Welfare Division's determination. The court basically found that Sarah had established her case for ADC. The court found specifically:

"4.  That at the hearing, Petitioner proved that she transferred her equity in the family home to her sister in full satisfaction of debts due the sister for support of the Petitioner and her minor children.

"5.  That at the hearing, Petitioner proved a debt due to her sister of $6,500 and an equity in the house of $6,000.

"6.  That at the hearing, Petitioner proved that it was necessary to transfer her equity in the house to her sister to save the home from foreclosure, and further, to maintain a home for her minor children.

"7.  That the conclusion reached by Respondents was in no way supported by the record and was arbitrary, capricious, and in violation of Petitioner's rights of due process and fundamental fairness; and further, that the Respondents offered no evidence contrary to that of Petitioner.

"8.  That Petitioner transferred her equity in the real property for a legally enforceable debt in accordance with Section 204.32 of the Welfare Manual.

"9.  That Petitioner was qualified for Aid to Dependent Children from the date of her original application in April, 1970."

From this adverse ruling the Welfare Division has prosecuted their appeal asserting that the lower court exceeded its jurisdiction by substituting its own judgment for that of the Welfare Board.

The right for judicial review of an adverse administrative decision is afforded an applicant for ADC statutorily by NRS 425.120(3). This right of review is limited in scope, viz:

"The district court shall either affirm the decision of the welfare division, or, if it concludes that the findings of the welfare division are not supported by evidence or that the welfare division's decision is arbitrary, capricious or otherwise contrary to law, reverse the decision and remand the case to the welfare division for further proceedings in conformity with the decision of the court."

This has been held to mean that, "[i]n reviewing the decision of the Welfare Division this court is limited to the same scope of review as the district court. It is the function of this court, as well as the lower court, to review the evidence presented to the board to determine if the board's decision was supported by the evidence and to ascertain whether that body acted arbitrarily, capriciously, or contrary to the law. NRS [425.-120(3)]; Barnum v. Williams, 84 Nev. 37, 436 P.2d 219 (1968); Bd. Chiropractic Exam'rs v. Babtkis, 83 Nev. 385, 432 P.2d 498 (1967)." Miller v. West, 88 Nev. 105, 493 P.2d 1332 (1972).

Focusing on the issue presented to the administrative review board, we find that Nevada State Welfare Division Manual Chapter on Resource Determination—ADC (8/71 § 204.32 Effect of Transfer or Sale of Real Property) provides in effect that a period of ineligibility for ADC benefits may be predicated on the sale of real estate for which commensurate value was not received, or stated differently, but achieving the same result, property was transferred to settle an unenforceable debt.[1]

As to Sarah's debt to the Morgans, a verified statement was used to prove the amount. Welfare ignored all of these, even those evidenced by checks, in the computation of the ineligibility period. In considering the requirements of Sec. 204.32(4)

---

[1]"204.32 EFFECT OF TRANSFER OR SALE OF REAL PROPERTY

A. PRIOR TO APPLICATION FOR ASSISTANCE

If the following conditions are met, the transfer or sale will not affect eligibility for assistance:

1. Consideration commensurate with the value of the property was received. Value of the property is based on general property value of similar real estate in the community.

. . .

4. Transfer or sale was made to settle a legally enforceable debt which is a matter of record and has been verified."

that the debt be a "matter of record and verified," we must keep in mind the legislative admonishment that the provisions of the ADC chapter shall be liberally construed to provide assistance for dependent children and to keep these children in their own homes whenever possible. NRS 425.020(1) and (2). A strict definition of "matter of record" appears in Black's Law Dictionary (4th Ed. Rev. 1968): "Any judicial matter or proceeding entered on the records of a court, and to be proved by the production of such record."[2] Here we are concerned with a welfare statute regulating applications by a class of persons not generally possessed with sufficient sophistication to conduct their business affairs on the same level as an attorney or businessman. To require a recorded court judgment or even a verified promissory note signed by the party to be charged is beyond the standard to which welfare applicants should be held. We interpret the requirements of Sec. 204.32(4) as placing upon the applicant the burden of establishing by a sufficient record the bona fides of the particular transaction and that use must be made of all available evidence in order to discount fraud.[3] Cf. Donato v. Wyman, 303 N.Y.S.2d 935 (N.Y.App. 1969).

Here, Sarah did the best she could to prove the debts. She used all available evidence. There was no contention of fraud by Sarah (nor proof of same) upon the Welfare Division. Also, it is not seriously contended that intra-family debts are not "debts" for the purposes of ADC. At the district court hearing Mr. Samuelson, attorney for Welfare, stated: "Your Honor, as so often happens in these cases from fool statements made by some of our workers to placate and we find in the record, Your Honor, on April 22, 1970, that the application was denied because the house was sold to settle debts which were not legally enforcible. We knocked that out of course. *A debt owed to a brother or sister may be perfectly enforcible. . . .*"

Sarah met her burden that she was qualified to receive ADC benefits at the time of her April 9, 1970 application. We affirm the district court's reversal of the administrative board's decision and remand the case to the Welfare Division for

---

[2]Similarly, "A matter entered on the records of a court of record; a matter recorded in the place and manner required by law." Ballentine's Law Dictionary (1948).

[3]The issue as to legal sufficiency of the proof was neither raised nor briefed by the parties. We have included the foregoing discussion for guideline purposes.

further proceedings in conformity with the decision of the lower court.

Affirmed and remanded.

BATJER and GUNDERSON, JJ., concur.

THOMPSON, J., with whom MOWBRAY, J., agrees, dissenting:

Although we grieve for Sarah and her six children, we cannot find that Welfare acted arbitrarily, capriciously, or contrary to law in denying her application for A.D.C. benefits. NRS 425.120(3). When Sarah first applied she was ineligible since the assessed value of her home exceeded agency limits. Later, she transferred her home to her sister in satisfaction of an alleged debt, and once more applied for benefits. That transfer would not affect eligibility for assistance if made to settle a legally enforceable debt which is a matter of record and has been verified. Welfare Manual Sec. 204.32. We presume that a "record" of the debt contemplates a written acknowledgment of its existence made at or about the time the debt was incurred, and given to the creditor for his or her protection. This requirement is reasonable and apparently is designed to protect Welfare against the act of one who transfers property away in order to become eligible for benefits. No such record of the debt exists in this case. True, Sarah's sister testified at the agency hearing that she had advanced to Sarah money, goods and services valued at $6,585.59 before receiving Sarah's home. This testimony, given seven months after the transfer, cannot constitute the "record" contemplated by the regulation. The absence of a record of the debt leads us to presume that the aid supplied to Sarah by her sister was in the nature of a gift prompted by love and affection. Cf. Donato v. Wyman, 303 N.Y.S.2d 935 (1969).

Only the parties to that transfer know of the motivation therefor, and only they are in a position to prove that it was effectuated in good faith. Welfare is helpless to prove otherwise. It can do no more than ask for the "record" of the debt which prompted the transfer, and if such record is nonexistent, assume that the transfer was made solely for the purpose of depleting Sarah's assets to a point where she would be entitled to benefits. Cf. NRS 427.200(5) of Nevada Old Age Assistance Act; NRS ch. 112, Uniform Fraudulent Conveyance Act. Perhaps the understandable concern of the majority of this court for the Munger family should be visited, instead, upon

those families who are without assets which disqualify them for assistance. This, indeed, is the true concern of Welfare.