■   In the Matter of LEE HOPKINS, on Behalf of Herself and Her Minor Child, Anthony Hopkins, Petitioner, v BARABARA BLUM, as Commissioner of the New York State Department of Social Services, et al., Respondents. — Proceeding pursuant to CPLR article 78, *inter alia,* to review a determination of the respondent State Commissioner of Social Services, dated May 5, 1980 and made after a statutory fair hearing, which affirmed a determination of the local agency that petitioner was ineligible for public assistance. Determination confirmed and proceeding dismissed on the merits, without costs or disbursements. Petitioner's initial contention, that the notice of denial forwarded to her by the local agency was ineffective and violative of due process, is without merit. In the notice she was advised that she was being denied aid to dependent children (ADC) benefits and food stamps since she had transferred money to another person without a verification of the existence of a debt being owed to that person. The notice also stated that "[s]ince this is a resource which could be used to meet your current needs, it is therefore an improper transfer of an asset in order to qualify for public assistance." The notice concluded that petitioner, in addition, had not verified the source of certain deposits made to a checking account in her name and in the name of her daughter, Ellen, who was self-supporting. Petitioner was too ill to attend the fair hearing and she was represented thereat by her attorney and by her "independent" daughter, Debra, who had attended the application and follow-up interviews in the place of her mother. At the hearing, the local agency representative stated that the rationale for denying benefits was not that the transfer was improper, but that the resources were currently available to the petitioner. At this time petitioner's attorney was given an opportunity to adjourn the hearing upon the basis that the reason for denial had been changed and that petitioner was entitled to be provided with adequate notice of such change; petitioner's attorney, however, did not avail himself of such opportunity. Evidence offered at the hearing consisted of a written statement from the petitioner to the effect that the loan from the friend had been repaid in cash (from an insurance accident settlement, the receipt of which had initially disqualified petitioner from public assistance), that there had been no promissory note evidencing such loan, and that the sources of the deposits made to the joint checking account maintained with her nonresident daughter Ellen consisted of money deposited by Ellen. There was also submitted in evidence a note from the purported creditor in which it was claimed that he had personally contributed to the petitioner's living expenses in varying amounts for a five-year period, which said amounts had been repaid. Petitioner's daughter Debra then testified that although she had not been asked to furnish a letter from the sister who had made deposits to the joint checking account with respect to the source of such deposits, such a letter had been given to the local agency subsequent to its decision denying benefits. Both Federal and State regulations mandate that an applicant for, or a recipient of, public assistance benefits be specifically informed of the reasons for an agency's action (45 CFR 205.10 [a] [4] [i] [B]; 18 NYCRR 358.11 [e]). Although there was a change in reasoning for the instant denial, it cannot be said that the notice did not advise petitioner of the necessity of addressing the issue of whether a transfer had in fact occurred. There is no question that the written notice recited the exact facts upon which the agency's action was based (see *Matter of Herring v Blum,* 68 AD2d 64). In addressing the issue of whether a transfer of funds would preclude the petitioner from receiving ADC benefits (see *Matter of Shook v Lavine,* 49 AD2d 238), she would have been obliged initially to substantiate that it was a loan which had been repaid. In any event,

petitioner is deemed to have waived "adequate notice" since her counsel clearly elected to proceed with the hearing despite the offer of an opportunity to adjourn. We find that the determination was supported by substantial evidence (see *300 Gramatan Ave. Assoc. v State Div. of Human Rights*, 45 NY2d 176). Petitioner had the burden to provide accurate, current and complete information with regard to her needs and resources (see *Lavine v Milne*, 424 US 577; 18 NYCRR 351.1 [b] [2] [ii]). It was not the agency's obligation to conduct a collateral investigation to determine the source of the bank deposits. Such investigation, in any event, had it been made, merely would have established that the deposits were made by Ellen. In addition, although the local agency did not specify the type of verification that it wished, the notes brought in by petitioner in regard to the loan constituted no verification. Such notes can only be looked upon as self-serving statements which, without more, constitute such circumstantial evidence as gives rise to permissible reasonable inferences supporting the agency determination (see *Matter of Donato v Wyman*, 32 AD2d 1061). The instant matter may be contrasted with *Matter of Di Pietto v Toia* (67 AD2d 663), in which there was proof of the existence of a loan, verification of the fact that it had been repaid by petitioner, and further evidence of the creditor's refusal to return the funds. In this instance it was within the province of the State commissioner to evaluate the credibility of petitioner's evidence and consider such in view of the fact that all the purported transactions involved cash and were not verifiable by documentary evidence. In this light, petitioner's self-serving evidence could be considered as not being worthy of belief (see *Matter of Donato v Wyman, supra*). Petitioner's request for counsel fees has no merit (see *Matter of Bess v Toia*, 66 AD2d 844; *Matter of Shields v Blum*, 80 AD2d 668; *Matter of Brennin v Kirby*, 79 AD2d 396). Mollen, P. J., Lazer, O'Connor and Bracken, JJ., concur.