**Elizabeth SEANER, as Conservator of Wilfred Capell, and Millard Fillmore Hospital, Plaintiffs,**

v.

**Karen SCHIMKE, Deborah A. Merrifield, Kirk Peryea, Patricia Milton, Mary Jo Bane, Michael J. Dowling, Erie County, Defendants.**

No. 94–CV–0095H.

United States District Court,
W.D. New York.

May 30, 1995.

Chris T. Brunea, Buffalo, New York, for plaintiffs.

Howard B. Frank, Office of the County Attorney, Buffalo, New York, for defendants Schimke, Merrifield, Peryea, Milton & Erie County.

Dennis C. Vacco, Attorney General of the State of New York, Andrew Lipkind, Assistant Attorney General, Buffalo, New York, for Defendants Bane and Dowling.

## DECISION AND ORDER

HECKMAN, United States Magistrate Judge.

The parties have consented, pursuant to 28 U.S.C. § 636(c), to have the undersigned conduct all further proceedings in this case, including entry of judgment. Pending before the court is plaintiffs' motion for summary judgment (Item 15). In response to plaintiffs' motion, defendants have moved for summary judgment (Items 20 & 25).

For the reasons set forth below, defendants' motions are granted and plaintiffs' motion is denied.

### *BACKGROUND*

The plaintiffs, Wilfred Capell, by his Conservator Elizabeth Seaner, and Millard Fillmore Hospital have filed this complaint under the Civil Rights Act, 42 U.S.C. § 1983. Plaintiffs claim that Wilfred Capell was wrongfully denied Medicaid benefits, in violation of the due process and equal protection clauses of both the federal and state constitutions, as well as the federal Medicaid statute, 42 U.S.C. § 1396, 1396a-u.

The defendants in this case have been sued individually and in their official capacity and are as follows: Karen Schimke, former Commissioner of the Erie County Department of Social Services ("ECDSS"), Deborah A. Merrifield, the present Commissioner of ECDSS, Kirk Peryea, the unit supervisor for the Medicaid Qualification Unit of ECDSS, Patricia Milton, a medicaid interviewer for the Medicaid Qualification Unit of ECDSS, Mary Jo Bane, the former Commissioner of the

New York State Department of Social Services, Michael J. Dowling, the present Commissioner of the New York State Department of Social Services, and Erie County.

Wilfred and Adeline Capell, both of whom are now deceased, were married in 1935 in Buffalo, New York. They had three children: Barry, Bryan, and Bruce. Barry Capell predeceased his parents and is survived by two daughters, Holly Capell and Ann Capell (Eden). In 1953, Wilfred and Adeline became title owners of 7666 Arnold Drive in Wheatfield, New York and made this property their marital residence. The deed was duly recorded in the Niagara County Clerk's office (Item 17).

In 1987, as a result of marital difficulties due to the onset of Wilfred's Alzheimer's disease, Wilfred Capell left the marital residence and moved in with Elizabeth and Norman Seaner (Item 17). Soon thereafter, Wilfred's physical and mental health began to deteriorate. In February of 1988, Elizabeth Seaner ("Seaner") petitioned the Supreme Count of Erie County to be appointed conservator of Wilfred Capell's property (Item 17).

On August 3, 1988, Wilfred Capell was admitted to Millard Fillmore Hospital. He was later transferred to the Skilled Nursing Facility of Millard Fillmore, where he remained until his death on May 14, 1994 (Item 17).[1]

Adeline Capell filed for divorce in New York State Supreme Court, Niagara County. On December 28, 1988, a final divorce agreement, providing for the distribution of the marital property, was entered into by oral stipulation (Item 15, exhibit E). On January 31, 1989, Adeline and Wilfred Capell were divorced pursuant to an order of the New York State Supreme Court. The parties stipulated agreement was incorporated but not merged in the divorce decree. *Id.*

According to the terms of the agreement, Adeline Capell retained a life estate in the property at 7666 Arnold Drive, with the remainder interest to their adult children Barry and Bruce Capell, who were to receive one-third ($\frac{1}{3}$) each, and their grandchildren, Holly Capell and Ann Capell (Eden), who were to receive one-sixth ($\frac{1}{6}$) each (Item 15, exhibit E). On January 11, 1989, Adeline Capell signed the deed to 7666 Arnold Drive, transferring her interest in the property as designated in the divorce agreement. However, the deed was not recorded until August 17, 1992 (Item 15, exhibit F).

Meanwhile, on January 3, 1989, the Erie County Department of Social Services granted full medicaid coverage to Wilfred Capell (Item 15, exhibit G). Capell's Medicaid coverage was renewed in 1990 and 1991.

On September 25, 1991, Elizabeth Seaner was appointed conservator of Wilfred Capell's property by the New York State Supreme Court.[2] On November 2, 1991, Ms. Seaner, on behalf of Wilfred Capell, signed a deed transferring Wilfred Capells' interest in the Arnold Drive property according to the terms of the divorce agreement. However, this deed was also not recorded at that time.

In September of 1992, Adeline Capell died. That same month the Arnold Drive property was sold to Eugene and Sue Robinson (Item 22, exhibit E). Title to the property and the mortgage thereon were recorded in the Robinson's name on December 4, 1992 (Item 15, exhibit J).

On October 10, 1992, Ms. Seaner applied to ECDSS to recertify Wilfred Capell's eligibility for medical assistance benefits for the period beginning December 1, 1992 (Item 22, exhibit L). In a handwritten margin note on the application, Ms. Seaner indicated that the Arnold Drive property had recently been sold for $110,000.00. *Id.*

Prior to the recertification application, the question of the transfer of the Arnold Drive property, and the possible assignment of the sales proceeds, had come to the attention of ECDSS. Because the transfer of the property could have an effect upon Medicaid eligibility, ECDSS initiated a resource investigation of Wilfred Capell. The investigation results, dated September 11, 1992, concluded that title to the Arnold Drive property was in

---

1. This claim was filled on February 9, 1994, prior to Wilfred Capell's death.

2. Seaner filed her petition to be appointed conservator in 1988.

the names of Adeline and Wilfred Capell based upon the 1953 deed (Item 22, exhibit K).[3]

As a result of Ms. Seaner's notation on the application, along with the results of their own investigation, ECDSS informed Ms. Seaner that the recertification application was incomplete. To complete the application, ECDSS required proof of the closing of the sale on the Arnold Drive property, proof of the amount received for the property and proof of the location of the sales proceeds (Item 22, exhibit M). ECDSS warned Ms. Seaner that under New York state law, the department had to make a decision on Wilfred's application within thirty days. Thus, absent a response to their request by November 27, 1992, they would assume that she did not wish to continue the application and it would be denied. *Id.*

Seaner sent a reply letter, dated November 19, 1992. She explained that Barry Capell had sold the property in September of 1992, after Adeline Capell's death. She did not have Barry Capell's address but knew that he worked at the prison in Elmira. She indicated that although she knew Wilfred Capell's name was on the title to the property, he had not received any of the proceeds from the sale of 7666 Arnold Drive. However, Ms. Seaner did not supply the requested documents, nor did she request more time to do so (Item 22, exhibit E).

ECDSS sent Seaner a notice of intent to discontinue Wilfred Capell's medical assistance as of November 30, 1992, noting specifically Seaner's failure to provide the documents necessary to determine continued eligibility (Item 22, exhibit P). This notice informed Ms. Seaner that if she wanted the medical assistance to continue, she would have to send the required documentation to ECDSS before the cut-off date.

Ms. Seaner sent a note dated November 24, 1992, to ECDSS explaining that she did not have the deed. She again referred the department to Capell's son, Barry (Item 22, exhibit O). Ms. Seaner never supplied the documents nor did she inform ECDSS that

Mr. Capell had been legally divorced and that the property had been transferred to his children before the sale to the Robinsons (Item 22, exhibit H pp. 20–21, 25–26). Accordingly, Wilfred Capell's medicaid coverage was discontinued effective November 30, 1992, pursuant to the notice.

The notice of discontinuance informed Ms. Seaner that she had sixty days to request an administrative hearing to appeal the determination. Ms. Seaner never requested a hearing (Item 22, exhibit H p. 27). Millard Fillmore requested an administrative hearing by letter dated February 3, 1993, more than sixty days after the notice of discontinuance (Item 22, exhibit Q).

On April 19, 1993, an administrative hearing was conducted by the New York State Department of Social Services (Item 22, exhibit H). In a decision dated April 29, 1993, the Commissioner held that the administrative hearing had not been requested in a timely manner and therefore concluded that he did not have jurisdiction to review the county's determination.

## *DISCUSSION*

### I. SUMMARY JUDGMENT

Summary judgment is appropriate if the pleadings, discovery materials and affidavits on file "show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). In reaching this determination, the court must assess whether there are any material factual issues to be tried while resolving ambiguities and drawing reasonable inferences against the moving party. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248–49, 106 S.Ct. 2505, 2510–11, 91 L.Ed.2d 202 (1986); *Coach Leatherware Co., Inc. v. AnnTaylor, Inc.,* 933 F.2d 162, 166–67 (2d Cir.1991). A dispute regarding a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc., supra,* 477 U.S. at 248, 106 S.Ct. at 2510; *see Bryant v. Maffucci,* 923 F.2d

---

**3.** It is not clear when the title search was actually conducted by ECDSS. It would appear, however, that it was done before August 17, 1992, when the separate deeds conveying Wilfred and Adeline's interest in the Arnold Drive property were filed.

979, 982 (2d Cir.), *cert. denied,* 502 U.S. 849, 112 S.Ct. 152, 116 L.Ed.2d 117 (1991).

Once the moving party has met its burden of demonstrating the absence of a genuine issue of material fact, the nonmoving party must come forward with enough evidence to support a jury verdict in its favor, and the motion will not be defeated merely upon a "metaphysical doubt" concerning the facts, or on the basis of conjecture or surmise. *Bryant v. Maffucci, supra* (citing *Matsushita Electric Industrial Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586, 106 S.Ct. 1348, 1355, 89 L.Ed.2d 538 (1986)). In order to avoid summary judgment, the nonmoving party is under the obligation "to make a sufficient showing on an essential element of [its] case with respect to which [it] has the burden of proof." *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986); *Burke v. Bevona,* 931 F.2d 998, 1001 (2d Cir.1991). "Entry of summary judgment indicates that no reasonable jury could return a verdict for the losing party." *Coach Leatherware, Inc. v. AnnTaylor, Inc., supra,* 933 F.2d at 167.

In this case both parties have moved for summary judgment. The facts are not in dispute. Summary judgment is appropriate where, as here, only questions of law remain.

Plaintiffs argue that the recertification procedure followed in Wilfred Capell's case violated the Medicaid Act and the Constitution. Specifically, plaintiffs contend that (1) Mr. Capell should not have been required to provide information concerning the sale of the property at 7660 Arnold Drive, and (2) that ECDSS was required to conduct a collateral investigation when Ms. Seaner informed them she did not have the documents they requested.

Defendants argue that the recertification procedure followed by ECDSS was in compliance with the Medicaid Act and the Constitution. Defendants also argue that plaintiff Millard Fillmore lacks standing. However, because I find that the claims stated in the complaint are without merit as to both plain-

tiffs, the standing issue need not be addressed.

## II. THE RECERTIFICATION PROCESS

### A. The Requested Documents

■ The New York State regulations provide that a recipient of medical assistance must undergo recertification for benefits every twelve months. 18 N.Y.C.R.R. § 360–2.2(e). The burden is on the applicant to establish his or her eligibility. *Lavine v. Milne,* 424 U.S. 577, 96 S.Ct. 1010, 47 L.Ed.2d 249 (1976). In assessing eligibility for recertification, ECDSS will consider any resources available to the recipient within a thirty-month "look-back" period.[4] 18 N.Y.C.R.R. § 360–4.4(a)(1). As part of the recertification process, recipients must provide relevant documentation to ECDSS to verify eligibility. 18 N.Y.C.R.R. §§ 360–2.3(a)(2) and 360–2.3(c)(3). Failure to do so can result in a determination of ineligibility. 18 N.Y.C.R.R. § 351.8(a)(2)(ii). *St. Francis Hospital v. D'Elia,* 71 A.D.2d 110, 422 N.Y.S.2d 104 (2 Dept.1979), *aff'd,* 53 N.Y.2d 825, 440 N.Y.S.2d 185, 422 N.E.2d 830 (1981).

Plaintiffs contend that the New York regulation regarding the transfer of resources made within the thirty month look-back period for less than fair market value is relevant to this case. The New York regulation provides as follows:

> Any transfer of a resource for less than fair market value made within or after the thirty month period immediately proceeding the date the person becomes an institutionalized person, or the date the institutionalized person applies for [Medical Assistance], whichever is later, shall be presumed to have been made for the purpose of qualifying for nursing care or relative services in a nursing facility.... Such a transfer shall result in a period of ineligibility for these services....

18 N.Y.C.R.R. § 360–4.4(c)(2)(i). This "transfer of assets" rule tracks the requirements of federal law governing the Medicaid program. *See* 42 U.S.C. § 1396p(c)(1).

---

4. The regulation was amended in 1993 to require a thirty-six month look-back period. Capell's recertification application was filed in November of 1992, therefore, the thirty month look-back applies.

Plaintiffs argue that Wilfred Capell's interest in the property located at 7666 Arnold Drive was transferred pursuant to the divorce agreement entered in New York State Supreme Court in 1989. Thus, the transfer occurred outside of the thirty month look-back period. Therefore, plaintiffs conclude, the property was not an asset of Wilfred Capell's and ECDSS erred when they asked Ms. Seaner to produce documents relating to this property.

Plaintiffs' argument attempts to confuse the issues in this case. The deeds conveying Adeline and Wilfred Capell's interest in the Arnold Drive property were recorded in August of 1992. The Arnold Drive property was sold to a third party in 1992. That the actual transfer of Mr. Capell's interest may or may not have occurred in 1989 is relevant only to determining whether Wilfred Capell qualified for recertification. It is not relevant to the issue in this case—whether ECDSS could rightfully request documents pertaining to the 1992 transfer of the Arnold Drive property. Clearly, ECDSS had a right to seek this information. *Badenhausen, on Behalf of Spatafora v. New York State Dept. of Social Services,* 151 A.D.2d 913, 542 N.Y.S.2d 887 (3 Dept.1989) ("Failure to provide requested information necessary to determine an applicant's eligibility justifies denying a Medicaid application. . . ."); *Lieberman v. Perales,* 210 A.D.2d 593, 619 N.Y.S.2d 868, 869 (3 Dept 1994) ("DSS was not obliged to simply accept plaintiff's conclusory representations [about the exempt status of the bank account in question] and plaintiff's refusal to provide information that clearly was relevant in determining his eligibility . . . justified denial of his application").

Accordingly, plaintiffs' argument that ECDSS should not have required Ms. Seaner to produce this information is without merit.

## B. Collateral Investigations

Plaintiffs also argue that ECDSS was obliged to conduct a collateral investigation when Ms. Seaner informed them that she did not have the information requested about the sale of the property. The New York state regulations explain an agency's obligation to conduct a collateral investigation as follows:

> The applicant/recipient is the primary source of eligibility information. When the applicant/recipient is unable to document the information provided, the social services district must conduct an investigation to verify such information. . . .

18 N.Y.C.R.R. § 360–2.3(a)(3). ECDSS is not required to conduct a collateral investigation every time an applicant claims not to have requested information. Before a collateral investigation will be conducted, the medicaid applicant/recipient must establish that he or she is *unable* to document the information provided. *Neunie v. Perales,* 193 A.D.2d 681, 598 N.Y.S.2d 971 (2 Dept.1993) (citing *Hopkins v. Blum,* 87 A.D.2d 613, 448 N.Y.S.2d 208 (2 Dept.1982), *aff'd,* 56 N.Y.2d 506, 451 N.Y.S.2d 1028, 437 N.E.2d 286 (1983)) (collateral investigation not warranted where applicant has not shown she is unable to document information).

For instance, "inability" may be established where the applicant is mentally or physically unable to complete the application and has no family or friends to assist with the application, or these individuals have done all they can do but cannot obtain the needed information. *See, e.g., Southside Hosp. v. Kirby,* 123 A.D.2d 430, 506 N.Y.S.2d 735 (2 Dept.1986) (applicant was eighty-four years old and senile); *Gary G. v. D'Elia,* 88 A.D.2d 975, 452 N.Y.S.2d 324 (2 Dept.1982) (applicant had suffered a nervous breakdown and information requested was solely within his knowledge); *Gabai v. Grinker,* 148 Misc.2d 359, 560 N.Y.S.2d 384 (N.Y.Sup.Ct. 1990) (applicant did not speak English and had no family).

Plaintiffs cite *DeStefano v. Albany Cty. Dept. of Soc. Serv.,* 107 A.D.2d 969, 484 N.Y.S.2d 383 (3 Dept.1985), in support of their argument that a collateral investigation was required in this case. In that case, the court held that a collateral investigation was required where the applicant was unable to produce a life insurance policy that was kept in her mother's safe deposit box. The applicant's mother was ill and being cared for out-of-state.

In this case, Mr. Capell had a legally appointed conservator to assist with the recertification process, who was charged with the duty of managing Wilfred Capell's property, and who was the only person who could convey Mr. Capell's interest in the Arnold Drive property. The agency's previous investigation had produced a deed showing that Wilfred and Adeline Capell held title to the Arnold Drive property less than a month before it was sold to the Robinsons. ECDSS at that time was unaware that Mr. Capell had been divorced, that the divorce agreement required him to convey title to this property to his children, or that this conveyance had been completed with the filing of the separate deeds of Adeline and Wilfred Capell in August of 1992. Ms. Seaner was under an affirmative duty to inform ECDSS of these occurrences. 18 N.Y.C.R.R. § 360–2.3(a)(2) (emphasis added).[5] Clearly she has failed to show that she was unable to provide the requested information.

But, even assuming that the agency had an obligation to conduct a collateral investigation, I find that ECDSS satisfied that obligation. It was the agency's own inquiry that produced the deed indicating that Wilfred and Adeline Capell held title to the Arnold Drive property.

Accordingly, plaintiffs' argument is without merit.

## C. Due Process

■ Defendants did not violate plaintiffs' due process rights. The federal regulations require state plans to provide notice and an opportunity for an administrative hearing when medical assistance is terminated. 42 C.F.R. § 431.205. New York State gives the recipient the right to request a fair hearing within sixty days of termination. 18 N.Y.C.R.R. § 358–3.5(b). This complies with the federal requirements.

■ It is undisputed that the termination of Wilfred Capell's benefits was preceded by written notice and an opportunity to contest the determination at an administrative hear-

ing. Due process requires nothing further. *Goldberg v. Kelly, supra,* 397 U.S. 254, 268, 90 S.Ct. 1011, 1020, 25 L.Ed.2d 287 (1970).

Accordingly, plaintiffs' due process claim is dismissed.

## D. Equal Protection

■ Likewise, plaintiffs' equal protection claim is without merit. Wilfred Capell was not singled out or treated differently than any other similarly situated medicaid recipient undergoing recertification. The equal protection clause is simply not implicated by the facts of this case.

Accordingly, plaintiffs' equal protection claim is dismissed.

## E. State Law Claims

Based on the foregoing analysis, I find that plaintiffs' federal claims have no merit: "The district courts may decline to exercise supplemental jurisdiction over a [state law] claim if [ ] the district court has dismissed all claims over which it has original jurisdiction." 28 U.S.C. § 1367(c)(3); *United Mine Workers of America v. Gibbs,* 383 U.S. 715, 726, 86 S.Ct. 1130, 1138, 16 L.Ed.2d 218 (1966).

Accordingly, plaintiffs' state claims are dismissed.

## CONCLUSION

For the foregoing reasons, defendants' motions for summary judgment (Items 20 & 25) are granted and plaintiffs' motion (Item 15) is denied.

---

5. 18 N.Y.C.R.R. 360–2.3(a)(2) provides, in relevant part, as follows:

The [applicant] has a continuing obligation to provide accurate and complete information on his/her income, resources, and other factors that effect eligibility. . . .